PETER H. REMICK *v.* RAYMOND M. LOPES,
COMMISSIONER OF CORRECTION
(12815)

HEALEY, SHEA, SANTANIELLO, CALLAHAN and MORAGHAN, Js.

Argued January 15—decision released May 19, 1987

*Alphonse DiBenedetto,* special public defender, for the
appellant (petitioner).

*L. D. McCallum,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (respondent).

CALLAHAN, J. This is a petition for a writ of habeas corpus in which the petitioner is attempting to have declared null and void in the Superior Court of this state detainers filed by sister states under the provisions of the Interstate Agreement on Detainers (IAD). General Statutes § 54-186. Specifically, the petitioner seeks to nullify three detainers,[1] one from Maine, and two from Massachusetts, and also to avoid being transferred by the defendant to the temporary custody of Massachusetts authorities for trial.[2] He has appealed from the trial court's judgment denying his claims for relief. We find no error.

The facts are essentially undisputed. On March 5, 1982, the petitioner was sentenced to eleven concurrent fifteen year terms for robbery in the first degree. See General Statutes § 53a-134. Prior to sentencing, while a pretrial detainee at the Community Correctional Center at Bridgeport (CCC), three detainers were lodged against him, one from Maine, and one from each of two counties in Massachusetts. At that time, he was informed of his right to request disposition of the charges in these states after he was sentenced in Con-

---

[1] "The United States Supreme Court has defined a 'detainer' as a ' "notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." ' *United States* v. *Mauro,* 436 U.S. 340, 359, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978), quoting H.R. Rep. No. 91-1018, 91st Cong., 2d Sess. 2 (1970); S. Rep. No. 91-1356, 91st Cong., 2d Sess. 2 (1970); quoted in *Cuyler* v. *Adams,* 449 U.S. 433, 436 n.3, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981)." *State* v. *Braswell,* 194 Conn. 297, 300 n.1, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed 2d 786 (1985).

[2] Connecticut, Maine and Massachusetts are all signatories of the Interstate Agreement on Detainers. See General Statutes § 54-186; 34 Me. Rev. Stat. Ann. §§ 1411 through 1419; Mass Gen. Law. Ann. c. 276, §§ 1-1 through 1-8.

necticut, pursuant to General Statutes § 54-186. After the petitioner's sentencing, he was returned to the CCC to await his transfer to the Connecticut Correctional Institution at Somers (Somers). On March 8, 1982, he spoke with a correctional counselor at the CCC and orally requested the initiation of the IAD procedure to arrange for disposition of the outstanding detainers against him. The counselor agreed and indicated to the petitioner that the proper papers would be drafted. On the same day, the petitioner also drafted letters to the Superior Courts in Pittsfield, Massachusetts, and Wiscasset, Maine, making "Requests for a speedy trial on detainers your jurisdiction has lodged against me per the Interstate Agreement on Detainer Act."

The counselor at Bridgeport, however, never processed the paperwork for the petitioner before March 12, 1982, the date on which the petitioner was transferred to Somers. During his first week at Somers, however, the record office supervisor had delivered to him the three warrants lodged against him to which a note was affixed stating: "If you wish to have a speedy trial on the enclosed charges, write a letter to the court and request a final disposition. Attach a request form to your letter and send it to the Record Office. The Record Office will prepare the necessary cover letter and forward both to the Court, registered mail." The petitioner, however, refused to acknowledge receipt of the warrants, or to ask for the necessary forms to make the request under the IAD, claiming that he had done all that was required of him when he was at the CCC. Pursuant to institutional policy, the records supervisor at Somers mailed the three detainers to the petitioner the next day by regular mail.

Thereafter, between March and August of 1982, the petitioner wrote letters to Somers officials asking about his "speedy trial" requests; he never sent, however, a written notice to the respondent pursuant to article

III (b) of the IAD requesting a disposition of the three detainers. On September 10, 1982, the district attorney for Berkshire County, Massachusetts, sent a formal request pursuant to article IV of the IAD asking for temporary custody of the petitioner. The petitioner then filed this habeas corpus petition, challenging the transfer request, and seeking to have the three detainers declared null and void. He argues that the relief sought should be granted because Connecticut failed to comply with the provisions of the IAD, which resulted in the receiving state's failure to bring him to trial within 180 days as required by article III (a). The defendant argues that the petitioner never properly invoked the provisions of the IAD so as to trigger the speedy trial provisions of the agreement.

The trial court did not directly address whether the petitioner properly invoked the provisions of the IAD. Rather, it denied his petition for a writ of habeas corpus, finding that any remedial relief under the IAD must be sought in the receiving state. It also concluded with respect to the request for temporary custody that since the petitioner's case rests upon his assertion that he had made a valid request for final disposition, he must be deemed to have consented to being returned to Massachusetts under the IAD.

I

The threshold issue in this appeal is whether Connecticut has jurisdiction as the "sending state" under the IAD to entertain an action by a prisoner seeking to have detainers lodged by a "receiving state" declared null and void in this state.[3] We conclude that the policy

[3] General Statutes § 54-186, article II, provides: "As used in this agreement: (a) 'State' shall mean a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico. (b) 'Sending state' shall mean a state in which a prisoner is incarcerated at the time that he initiates a request for final disposition pursuant to article III hereof or at the time

considerations which prompted the adoption of the IAD by the majority of states support the sending state's authority to entertain such an action.

"The IAD 'is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law.' *Cuyler* v. *Adams,* 449 U.S. 433, 442, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981). The decisions of both federal and other state courts therefore may guide our interpretation of its provisions." *State* v. *Braswell,* 194 Conn. 297, 304, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985); see generally annot., 98 A.L.R.3d 160. "It has been generally held that under the IAD, courts in the state in which the prisoner is incarcerated [i.e., the sending or asylum state] lack authority to dismiss out-of-state charges even though a prisoner claims that the 'receiving state's' prosecuting authorities have violated his right to a speedy trial under Article III (a). *State ex rel. Garner* v. *Gray,* 59 Wis. 2d 323, 208 N.W.2d 161 (1973); *Baker* v. *Schubin,* 72 Misc. 2d 413, 339 N.Y.S.2d 360 (N.Y. Sup. Ct. 1972); *State ex rel. Chamberlain* v. *Martinco,* 288 Minn. 231, 179 N.W.2d 286 (1970); *State* v. *West,* 79 N.J. Super. 379, 191 A.2d 758 (Super. Ct. App. Div. 1963)." *Hickey* v. *State,* 349 N.W.2d 772, 776–77 (Iowa App. 1984); cf. *Mokone* v. *Fenton,* 710 F.2d 998, 1002–1003 (3d Cir. 1983); *Stewart* v. *Sheriff of Leavenworth County,* 5 Kan. App. 2d 593, 595, 620 P.2d 352 (1981).

We have also concluded that the asylum court, lacking extraterritorial jurisdiction, is powerless to dismiss the underlying charge. *Narel* v. *Liburdi,* 185 Conn. 562, 565, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 443 (1982). The trial court,

that a request for custody or availablility is initiated pursuant to article IV hereof. (c) 'Receiving state' shall mean the state in which trial is to be had on an indictment, information or complaint pursuant to article III or article IV hereof."

relying on our decision in *Narel* v. *Liburdi,* supra, and *Giardino* v. *Bourbeau,* 193 Conn. 116, 127, 475 A.2d 298 (1984), concluded that it was without jurisdiction to grant the petitioner any relief. The trial court's reliance on these decisions was misplaced, however, because neither decision addressed the issue presented in this case. Instead, those cases support the proposition that the asylum court does not have jurisdiction to dismiss the out-of-state charges. The petitioner, however, was not seeking such relief, but was asking only that the detainers be declared null and void and removed from his file, and that Massachusetts' request for custody be denied.

While we have never addressed the issue presented in this appeal, other courts have held that while the "sending state" may not dismiss the charges in the "receiving state," the "sending state" has authority to dismiss detainer warrants lodged by sister states where it appears that the underlying accusatory instrument itself is subject to dismissal in the courts of the "receiving state" for failure to comply with the speedy trial provisions of the IAD. *Hickey* v. *State,* supra, 777; *Baker* v. *Schubin,* supra, 419; *State* v. *Sykes,* 91 Wis. 2d 436, 439, 283 N.W.2d 446 (1979); see *Buchanan* v. *Michigan Department of Corrections,* 50 Mich. App. 1, 212 N.W.2d 745 (1973). These decisions, noting the adverse effects upon a prisoner resulting from a detainer being lodged against him, stressed the importance of ascertaining whether such detainers are valid. As noted in an article on the detainer system, "a prison inmate with a detainer filed against him because of outstanding charges in another jurisdiction may suffer several disabilities, ranging from mandatory maximum-security classification to exclusion from vocational rehabilitation programs and even to possible ineligibility for parole." D. Wexler & R. Hershey, "Criminal Detainers in a Nutshell," 7 Crim. L. Bull.

753 (1971); see generally E. Dauber, "Reforming the Detainer System; a Case Study" 7 Crim. L. Bull. 669 (1971).

The concern of the drafters of the Uniform Act on Detainers with the harmful effects of detainers is reflected in the act's statement of purpose. Article I[4] provides in pertinent part that "it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and *all detainers* based on untried indictments, informations or complaints. . . . " (Emphasis added.) A receiving state's failure to comply with the IAD's speedy trial provisions would violate the agreement's express purpose by denying speedy disposition of any pending charges. A fortiori, the refusal of the sending state to entertain an action to remove a detainer from a prisoner's file, based upon such a violation, would violate the express purpose of determining "the proper status of any and all detainers."[5]

We conclude, therefore, that the trial court's interpretation of the IAD as precluding the remedial relief

[4] General Statutes § 54-186, article I, provides: "The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."

[5] We note that our conclusion with respect to this issue does not prevent a "receiving state" whose detainer has been dismissed from using the extradition process upon the completion of the prisoner's sentence in Connecticut. See *Hickey* v. *State,* 349 N.W.2d 772, 777 (Iowa App. 1984); *Baker* v. *Schubin,* 72 Misc. 2d 413, 339 N.Y.S.2d 360 (1972).

the plaintiff was seeking was erroneous. Nevertheless, " '[w]here the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it.' *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978); *Saporiti* v. *Austin A. Chambers Co.,* 134 Conn. 476, 478, 58 A.2d 387 (1948); *Witek* v. *Town of Southbury,* 132 Conn. 104, 110, 42 A.2d 843 (1945)." *State* v. *Geyer,* 194 Conn. 1, 17, 480 A.2d 489 (1984) (*Shea, J.,* concurring). Because we determine that the petitioner was not entitled to the relief he was seeking, for reasons other than those relied upon by the trial court, we affirm the trial court's denial of the petition.

## II

We turn now to the issue of whether the petitioner properly invoked the provisions of the IAD to request a speedy disposition of the charges against him.[6] We conclude that, as a matter of law, he did not comply with those provisions and, therefore, is not entitled to the requested relief.

A brief overview of the mechanics of the IAD is necessary to our discussion of this issue. " 'The provisions of the agreement itself are activated only when the receiving or charging state lodges with the sending or asylum state a detainer based on a pending indictment, information or complaint. *People* v. *Lincoln,*

---

[6] We indicated earlier in this opinion that the trial court made no specific finding on the petitioner's compliance with the IAD or lack thereof. While it is firmly established that it is not our function to retry cases on appeal; *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 217, 427 A.2d 988 (1984); *State* v. *Zindros,* 189 Conn. 228, 238, 456 A.2d 288 (1983); the absence of a written request compels a conclusion that, as a matter of law, the petitioner did not comply with the IAD and therefore a factual finding by the habeas court is not necessary to our disposition of this issue.

42 Colo. App. 512, 514, 601 P.2d 641 (1979); *Burns* v. *State*, 578 S.W.2d 650, 652 (Tenn. Crim. App. 1978).' *Narel* v. *Liburdi*, supra, 567. After lodging the detainer an appropriate officer of the demanding state may make a written request for temporary custody of the prisoner for the purpose of trying these indictments, informations, or complaints that form the basis of the detainer. General Statutes § 54-186 (IAD), art. IV (a) and (c).[7] Unless the governor of the asylum state disapproves the request for temporary custody within thirty days of its filing, the demanding state 'shall be entitled to have a prisoner against whom [it] has lodged a detainer.' Id." *Giardino* v. *Bourbeau*, supra, 124–25. It is undisputed in this case that the detainers, as well as the transfer request by Massachusetts, were properly lodged in Connecticut.

Once a detainer has been filed against a prisoner, "custodial officials must promptly notify the prisoner of the source and contents of the detainer and of the prisoner's right to request a final disposition of the for-

---

[7] General Statutes § 54-186, article IV, provides in pertinent part: "(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; provided that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request; and provided further that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor or the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

\* \* \*

"(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. . . ."

eign charge; General Statutes § 54-186, art. III (c); the prisoner, upon notifying prosecuting officials in the demanding state of his or her request for a final disposition of the charge, must be brought to trial within 180 days of the request; General Statutes § 54-186, art. III (a)."[8] *Giardino* v. *Bourbeau,* supra, 125. It is undisputed that the records supervisor properly notified the plaintiff of his right to request a final disposition of the foreign charges.

[8] General Statutes § 54-186, article III, provides: "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of the imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of correction or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

"(c) The warden, commissioner of correction or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

"(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of correction or other official having custody

The petitioner claims that his verbal request to the correctional counselor at the CCC to prepare the appropriate paperwork for disposition of the existing detainers invoked the provisions of article III of the IAD. He argued before the habeas court, and now on appeal, that he did all he was required to do under the agreement, and that it was up to the Connecticut authorities to carry through upon his request.[9] We disagree.

of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

"(e) Any request for final disposition made by a prisoner pursuant to paraghaph (a) hereof shall also be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby or included therein by reason of paragraph (d) hereof, and a waiver of extradition to the receiving state to serve any sentence there imposed upon him, after completion of his term of imprisonment in the sending state. The request for final disposition shall also constitute a consent by the prisoner to the production of his body in any court where his presence may be required in order to effectuate the purposes of this agreement and a further consent voluntarily to be returned to the original place of imprisonment in accordance with the provisions of this agreement. Nothing in this paragraph shall prevent the imposition of a concurrent sentence if otherwise permitted by law.

"(f) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in paragraph (a) hereof shall void the request."

[9] We note that the petitioner's letters to the Superior Courts in Massachusetts and Maine did not invoke the provisions of the IAD, as they did not include a certificate of the "appropriate official having custody of the prisoner" as required by article III (a). *Hickey* v. *State*, 349 N.W. 2d 772, 778 (Iowa App. 1984); *Coit* v. *State*, 440 So. 2d 409 (Fla. App. 1983); *People* v. *Collins*, 85 Ill. App. 3d 1056, 407 N.E.2d 871 (1980). In addition, the petitioner makes no claim that his subsequent letters to Somers officials invoked the notice provisions of article III (a) and (b).

Article III (b) specifies the manner in which the prisoner is to deliver the requisite notice: "the detainee must give or send to his custodian in the asylum state a *written request* for final disposition of the charge lodged against him in the charging state and shall cause to be delivered to the prosecuting officer and the appropriate court of the prosecutor's jurisdiction written notice of the place of his imprisonment and of his request for final disposition." (Emphasis added.) *Narel* v. *Liburdi,* supra, 568–69; *Commonwealth* v. *Martens,* 398 Mass. 674, 677, 500 N.E.2d 281 (1986). It has been held that a prisoner must first meet the burden of compliance with IAD disposition procedures before he is entitled to invoke the agreement's benefits. See *Williams* v. *Maryland,* 445 F. Sup. 1216, 1220 (D. Md. 1978); *Gray* v. *Benson,* 443 F. Sup. 1284, 1286 (D. Kan. 1978); *Beebe* v. *Vaughn,* 430 F. Sup. 1220, 1223–24 (D. Del. 1977); *People* v. *Uplinger,* 69 Ill. 2d 181, 183, 370 N.E.2d 1054 (1977). Although we recognize that the IAD is remedial legislation and that a prisoner must be given some latitude in complying with its provisions; see *Williams* v. *Maryland,* supra; *Rainey* v. *Department of Corrections,* 41 Mich. App. 313, 199 N.W.2d 829 (1972); *People* v. *Esposito,* 37 Misc. 2d 386, 201 N.Y.S.2d 83 (1960); an *oral request* simply is not a sufficient request for final disposition under either the plain language of article III or judicial interpretation of this provision. Cf. *Williams* v. *Maryland,* supra; *Gray* v. *Benson,* supra; *Beebe* v. *Vaughn,* supra; *People* v. *Uplinger,* supra. "The notice provision of the IAD was obviously enacted to ensure adequate notification to the state, and its particulars may not be totally ignored." *Williams* v. *Maryland,* supra. Requiring written notification to the custodian in the asylum state ensures certainty and accountability in the processing of prisoners' requests for final disposition of outstanding charges. We conclude, therefore, that since the peti-

tioner never properly invoked the IAD, he is precluded from complaining that he has been denied his right to a speedy trial, and having the detainers lodged against him declared null and void.[10]

There is no error.

In this opinion the other justices concurred.

---

[10] This conclusion necessarily disposes of any discussion concerning the petitioner's second claim for relief in which he seeks to avoid being transferred to the custody of the Massachusetts authorities.