WILLIAM J. FURKA *v.* COMMISSIONER OF CORRECTION

SUPERIOR COURT     JUDICIAL DISTRICT     FILE NO. 0000165
OF TOLLAND

Memorandum filed February 22, 1989

*William J. Furka,* pro se, the petitioner.

*L. D. McCallum,* for the respondent.

BYRNE, J. This action is a petition for a writ of habeas corpus by a sentenced prisoner seeking to avoid a transfer of temporary custody to the state of New York to answer to pending criminal charges, on the grounds that (1) he was denied a right to a speedy trial due to the fact that he was processed under article IV of the interstate agreement on detainers, and (2) the request for a temporary transfer of custody was made by the local district attorney and not by the governor of New York or his designee.

The petitioner, William Furka, brings this application for a writ of habeas corpus to invalidate a detainer lodged against him by the district attorney for Westchester County, New York, and for an order declaring the request for his temporary custody to be null and void. The facts of the case are as follows: On August 13, 1985, the petitioner was arrested and charged with crimes in the state of Connecticut. In September, 1985, arrest warrants in the state of New York were lodged against the petitioner at the community correctional center in Bridgeport, where he was being held pending trial. On April 10, 1986, the petitioner was sentenced to seven years total effective sentence for the crimes charged in Connecticut. On April 17, 1986, the district attorney's office of Westchester County forwarded a copy of a warrant for the petitioner's arrest for crimes in that jurisdiction, and requested that those charges be lodged against the petitioner as a detainer. On April 24, 1986, the petitioner was notified of this detainer.

On or about May 9, 1986, the petitioner received a copy of a letter to the respondent from the Westchester district attorney, which accompanied a request for tem-

porary custody to obtain custody of the petitioner for disposition of the outstanding charges in New York, pursuant to article IV of the interstate agreement on detainers (IAD), General Statutes §§ 54-186 through 54-192. On or about November 10, 1986, the respondent applied for a writ of habeas corpus to bring the petitioner before a judge of this court to be advised of his rights attendant to an involuntary transfer of temporary custody to the state of New York. On December 10, 1986, the petitioner was brought before the court and advised of his rights under article IV of the IAD.

In February, 1987, the petitioner, through counsel, filed an application for a writ of habeas corpus challenging the requested transfer. On June 1, 1987, however, the petitioner was voluntarily transferred to the state of New Jersey before further proceedings took place so that he could be near his family and terminally ill child. He was transferred back to Connecticut on February 18, 1988, and filed an amended petition, pro se, also contesting the New York transfer on July 8, 1988.

The petitioner first claims that the detainer should be declared invalid because his presentation before the court on December 10, 1986, regarding the request for temporary custody occurred over 200 days after he was available to be transferred to New York pursuant to the request. Consequently, the petitioner argues that he was denied prompt presentation and a "speedy trial" under articles IV and V of the IAD. The respondent, however, contends that because the petitioner never filed a request for a final disposition of the foreign indictment as provided in article III of the IAD, he "has no standing to complain of any perceived delay in processing an Article IV Request for Temporary Custody."

As stated in article I, the purpose of the IAD is "to encourage the expeditious and orderly disposition of . . . [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." General Statutes § 54-186; see also *Bursque* v. *Moore,* 26 Conn. Sup. 469, 472, 227 A.2d 255 (1966).

"The detainer agreement contains two trigger mechanisms. The provisions of the agreement itself are activated only when the receiving or charging state lodges with the sending or asylum state a detainer based on a pending indictment, information or complaint. *People* v. *Lincoln,* 42 Colo. App. 512, 514, 601 P.2d 641 (1979); *Burns* v. *State,* 578 S.W.2d 650, 652 (Tenn. Crim. App. 1978). At that point the time clock can be activated by the detainee, under article III, or by the prosecuting authority in the charging state, under article IV." *Narel* v. *Liburdi,* 185 Conn. 562, 567, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 443 (1982). In the present case, it is not disputed that the petitioner did not activate the time clock under the provisions of article III. As a result, the respondent contends that the right, if any, to expeditious procedures under the IAD belongs to the receiving (demanding) state, not to the prisoner.

Article IV of the agreement sets forth the authority and procedure to transfer prisoners involuntarily on a temporary basis to a demanding state for the disposition of the charges there upon the request by a prosecutor for temporary custody. There is, however, a time frame set forth in article IV that provides that: "[T]here shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner." General Statutes § 54-186, article IV (a).

This section recites only that there is a thirty day period within which the governor of the sending state has discretion to approve or disapprove the request for temporary custody. At the expiration of the thirty day period, the prisoner does not acquire any right to be transferred to the receiving state for trial within any particularly defined time frame.

The petitioner is not precluded, however, from asserting certain procedural rights as a consequence of being transferred under article IV. Where states have adapted the IAD; General Statutes § 54-186 et seq.; and the Uniform Criminal Extradition Act (act); General Statutes § 54-157 et seq.; the petitioner becomes the beneficiary of certain procedural protections against involuntary transfers as established in the extradition process. *Cuyler* v. *Adams,* 449 U.S. 433, 448, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981). "The remedial purpose of the agreement supports an interpretation that gives prisoners the right to a judicial hearing in which they can bring a limited challenge to the receiving State's custody request." Id., 449.

It is not required under procedural due process that the time frames set forth in the act be applied to the provisions of the IAD. The only time requirement that must be complied with under the IAD is the thirty day waiting period within which the governor of the sending state may disapprove the temporary transfer of custody. After the lapse of this particular period of time, the sending state may temporarily transfer custody of the prisoner, unless the prisoner requests a judicial hearing by way of a writ of habeas corpus. Under both statutory schemes, there is no obligation on the part of the sending state to initiate a judicial hearing. The obligation to request a judicial hearing lies with the petitioning prisoner.

It should not be forgotten that petitioners under the act usually have been confined based upon the fugitive proceedings and are not serving another unrelated sentence. Every petitioner in an IAD proceeding, however, is serving an unrelated sentence, and the receiving state is only requesting temporary custody of a confined person. Under the act's procedure, it is the petitioner who must initiate the habeas corpus proceeding.

In the present case, it was the state who requested a judicial hearing and not the petitioner. Certainly, the petitioner cannot quarrel with this procedure in that it was his responsibility to bring the petition within a reasonable period of time after the expiration of the thirty day waiting period under the IAD. The petitioner in the present case chose not to do anything to request a judicial hearing within a reasonable period of time, and he cannot complain that it took the state a period of time to request a hearing that it did not need to transfer temporary custody of the petitioner. It could very well be that the petitioner found it in his best interests not to request a judicial hearing because, by the passage of time, the witnesses in the receiving state's criminal cases might become unavailable. Further, any due process problems in the pending criminal cases would be decided during the course of the trial in the sending state. *Michigan* v. *Doran,* 439 U.S. 282, 287, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978).

The petitioner's next claim is that the request for temporary custody is invalid because it was not from the governor of New York or approved by him or his designee. Article IV (a) provides: "The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a

detainer and who is serving a term of imprisonment in any party state made available in accordance with article V (a) . . . ."

There is no requirement that the governor of the receiving state or his designee become involved in an IAD proceeding, and there is no due process requirement that the act's procedures supersede the express language set forth in article IV (a). It is quite clear that the phrase "appropriate officer" does not mean the governor or his designee. *Cuyler* v. *Adams,* supra. The governor's ability to disapprove the transfer of temporary custody under article IV negates any possible assertion that the governor of the receiving state must be the "appropriate officer." The only logical "appropriate officer" is the district attorney—attorney for the state in the territorial jurisdiction of the receiving state where the alleged criminal offenses took place. There is no merit to either claim put forth by the petitioner in this case.

Accordingly, the petition for a writ of habeas corpus is dismissed.