[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this petition for habeas corpus, the petitioner, Edward Smith, challenges the validity of a detainer lodged against him by law enforcement officials of Los Angeles County, California. Specifically, the petitioner claims in his second amended petition that the California detainer is invalid, because of 1) the dismissal of a fugitive from justice charge against the petitioner and 2) the State's failure to comply in timely fashion with the requirements of the Uniform Criminal Extradition Act.
The parties have stipulated that the petitioner plead guilty on December 8, 1989 to four counts of credit card theft, was sentenced to imprisonment for a total of four years, and that a charge of being a fugitive from justice based on a crime allegedly committed in Los Angeles was nolled on December 27, 1989. The petitioner's estimated release date is in June 1992.
On January 11, 1990 the Los Angeles Sheriff's Office sent to the warden of the state correctional facility at Niantic a certified copy of a felony warrant for Edward Smith III, identified him as having the same birth date as the petitioner, made a request for detainer, and requested that Connecticut inform the petitioner of the detainer and of his right to request a speedy trial of the charges in California. In his amended petition at paragraph 8, the petitioner alleges that the detainer was actually lodged on January 22, 1990.
On January 31, 1990, Connecticut prison officials presented the petitioner with a document, Exhibit A, notifying him of the receipt of the California detainer and advising him of his right to request a speedy trial on that charge. The petitioner refused to sign an acknowledgment of receipt of the notice and did not sign those portions of the form necessary for either a request for a speedy trial or for appointment of counsel to advise him on the matter. CT Page 3300
The petitioner moved for and was granted a dismissal of the Connecticut fugitive from justice charge on February 20, 1990.
On March 2, 1990, California sought temporary custody of the petitioner, who was brought before the court (Fracasse, J.) on May 1, 1990 and advised of his right to challenge extradition by filing a petition for a writ of habeas corpus. The parties have stipulated that the content of that advisement is not at issue.
The parties have further stipulated that the petitioner was approved for participation in a supervised home release program to begin February 1, 1990 but that he was ultimately denied participation because of the existence of the California detainer.
The Connecticut Supreme Court has ruled in Remick v. Lopes,203 Conn. 494, 498-501, 525 A.2d 502 (1987), that the courts of this state have jurisdiction to determine the validity of detainers lodged by other states as to persons incarcerated in this state.
The petitioner has not briefed his initial claim that the dismissal of the charge of being a fugitive from justice precluded the State of California from filing a detainer and seeking temporary custody for prosecution of the charges. The court treats that argument as abandoned.
The gravamen of the petitioner's complaint is that because California did not comply with certain provisions of the Uniform Criminal Extradition Act at the time it filed the detainer and sought temporary custody, the detainer is invalid. Specifically, the petitioner objects that the detainer and request for temporary custody do not recite that he "was present in the demanding state at the time of the commission of the alleged crime, and that he thereafter fled from the state" and are not "authenticated by the executive authority making the demand", pursuant to 54-159 C.G.S.
The interstate agreement on detainers (IAD) states at Article 1, 54-186 C.G.S., the policy of encouraging the expeditious and orderly disposition of untried indictments and charges from other jurisdictions against Connecticut prisoners. The IAD also serves to protect the right of a prisoner to a speedy trial of charges against him in other states.
At Article III, the IAD provides that a prisoner be notified of the filing of a detainer by another state and given an opportunity to request a final disposition of the indictment on which the detainer is based. In the present case, the petitioner was notified of the California detainer twenty-one days after the retainer was sent to Connecticut authorities but only nine days CT Page 3301 after his petition alleges that the detainer was lodged. He declined to sign the documents necessary to trigger his removal to California for resolution of the charges. The petitioner's claimed failure to comprehend the consequences of requesting prompt disposition is not credible in view of the facts that 1) he declined to request counsel to advise him even though the documents concerning the detainer alerted him to that opportunity and 2) he took steps to have the fugitive from justice charge dismissed after having been advised of the detainer. The court finds that the petitioner was provided with timely notice of the detainer and simply chose not to exercise his right to avail himself of the provisions of Article III of the IAD in order to secure a speedy trial in California.
Having received no request by the petitioner for disposition of the charges, the California authorities on March 2, 1990 availed themselves of their option, pursuant to Article IV of the IAD, to request temporary custody of the petitioner, who filed this petition after having been advised by the court on May 1, 1990 of his right to challenge extradition.
In Cuyler v. Adams, 449 U.S. 433, 450 (1981) the Supreme Court of the United States concluded as a matter of federal law that "persons transferred pursuant to the provisions of the [IAD] are not required to forfeit any pre-existing rights they may have under state or federal law to challenge their transfer to the receiving state." At issue in Cuyler was the availability of the pre-transfer hearing required by the sending state's extradiction statute for a prisoner as to whom temporary custody was requested by the demanding state pursuant to the IAD. The Supreme Court concluded that such a hearing was required and that a prisoner being involuntarily transferred pursuant to the IAD "shall be entitled to all procedural protections of the Extradition Act." Cuyler, supra, at 447-48. Contrary to the petitioner's contention here, the Supreme Court did not indicate that the detainer itself was invalid because of a failure by a sending state to afford its prisoner all protections of the extradition act upon the later filing of a request for temporary custody. Rather, the Court's holding was limited to a requirement that the safeguards of the extradition act be afforded before actual extradition.
While a prisoner may voluntarily effectuate the purposes of the IAD by requesting transfer for trial in the demanding state after he is notified of the detainer, if the prisoner declines to do so, the IAD imposes no time limitation within which the demanding state must seek temporary custody via involuntary transfer of the prisoner.
As the Connecticut Supreme Court observed in Remick v. Lopes, 203 Conn. 494, 500 n. 5 (1987), even in a situation in which CT Page 3302 a prisoner requests a speedy trial in the demanding state and the detainer filed by that state is dismissed for failure to provide a trial within the time period specified in Article III of the IAD, the demanding state may use the extradition process upon the completion of the prisoner's sentence in Connecticut.
While the petitioner emphasizes the amount of time which elapsed between the arrest on the fugitive charge and his being brought before the court on May 1, 1990 to be advised of his rights upon extradition, his arguments ignore the facts that he was advised of the detainer within, at most, twenty-one days of its having been sent to Connecticut, and that he declined to request prompt resolution of the California charges when advised of his right to do so pursuant to Article III of the IAD.
The only time limitation identified in Article IV of the IAD, which governs transfers of Connecticut prisoners for trial in other states, is a thirty-day period after receipt of a request for temporary custody during which the governor may disapprove the request either upon his own motion or upon motion of the prisoner. In Furka v. Commissioner of Correction, 41 Conn. Sup. 320, 324,324, 21 Conn. App. 298 (1990), the Appellate Court approved per curiam a Superior Court denial of a habeas petition in which the trial court stated that "[a]t the expiration of the thirty day period, the prisoner does not acquire any right to be transferred to the receiving state within any particularly defined time frame."
The court finds that the notice given to the petitioner of the receipt of the California detainer was reasonably prompt and that no other applicable time requirements have been violated.
Section 54-159 C.G.S. clearly states in applicable part that "[n]o demand for the extradition of a person charged with a crime in another state shall be recognized by the governor unless in writing alleging. . .that the accused was present in the demanding state at the time of the commission of the alleged crime, and that he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon. . ., [which] must be authenticated by the executive authority making the demand." Section 54-157 defines "executive authority" as "the governor and any person performing the functions of governor in a state other than this state."
The petitioner claims that the request for temporary custody cannot be honored because it failed to comport with all provisions of the Uniform Criminal Extradition Act at 54-159 C.G.S. in that 1) the copy of the indictment was not "authenticated by the CT Page 3303 executive authority making the demand," and 2) that the demand did not include a written allegation "that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state."
The prohibition against extradition absent compliance with the requirements of 54-159 C.G.S., like the pre-transfer hearing at issue in Cuyler, constitute a "protection" afforded by the UCEA. The respondent has attached to the return the documents it takes to constitute California's request for temporary custody, and this court finds that they do not conform to the requirements of 54-159 C.G.S. set forth above.
The respondent cites Furka v. Commissioner of Corrections, supra, as dispositive of the petitioner's claims. In fact, the courts in Furka were not engaged in a consideration of whether the provisions of 54-159 C.G.S. must be met by the document requesting temporary custody under the IAP. Rather, the issue in Furka was whether Article IV(a) of the IAD was complied with where an official other than the governor of the demanding state initiated the request for temporary custody.
So far as this court has been able to determine, the courts of Connecticut have not had occasion to decide whether a request for temporary custody must comply with the cited requirements for extradition, however the Connecticut Supreme Court has ruled in Wentworth v. Bourbeau, 188 Conn. 364, 368, 449 A.2d 1015 (1982) that where a person subject to extradition challenges that extradition by a petition for habeas corpus, the court reviewing the habeas petition must determine "whether the extradition documents on their face are in order." The court finds that the papers at issue are not in order in that they do not conform to the requirement of 54-159 C.G.S. The respondent's observation that Article IV of the IAD requires less stringent procedures does not in fact illuminate the issue. The same provision makes no mention of a pre-transfer hearing, however the Supreme Court in Cuyler, supra, ruled that such a hearing is necessary in order to furnish a proposed transferee with the protection of the UCEA.
The court finds that the documents presented by California do not comport in full with 54-159 C.G.S. and that they may not, in their present state, be honored by the respondent. This conclusion does not, however, constitute a determination that the California detainer itself is invalid. The petitioner erroneously equates the detainer with the request for temporary custody. Here, as in Hudson v. Moran, 760 F.2d 1027, 1029 (9th Cir. 1985), cert. denied 474 U.S. 981, the petitioner has established only the insufficiency of the present request for temporary custody, not any insufficiency or illegality of the detainer, which shall continue in effect so long as the petitioner is in the CT Page 3304 respondent's custody. Nothing in this opinion is meant to suggest that California is foreclosed from renewing its request for temporary custody upon the transmission of documents that comport with all requirements of 54-159 C.G.S. Since the petitioner is in custody in Connecticut for reasons independent of the detainer and request for temporary custody, the time limitations of the UCEA do not apply.
It is the judgment of this court that the respondent shall not extradite the petitioner or deliver him to the temporary custody of the State of California until such time as that state has made a request which fully complies with 54-159 C.G.S.
All other relief sought by the petitioner is denied.
BEVERLY J. HODGSON, JUDGE