ALPHONSO JOHNSON *v.* WARDEN, STATE PRISON
(14198)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and F. X. HENNESSY, Js.

Argued March 21—decision released May 21, 1991

*L. D. McCallum,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* then attorney general, for the appellant (respondent).

*David J. Wenc,* for the appellee (petitioner).

CALLAHAN, J. The petitioner, Alphonso Johnson, is in the custody of the respondent warden of the Connecticut Correctional Institution at Somers. His incarceration resulted from his conviction of a crime committed in Connecticut for which he was originally sentenced on February 16, 1979, to a term of imprisonment of not less than twenty years nor more than forty years. His sentence was later modified to a term of imprisonment of not less than ten years nor more than twenty years.

While the petitioner was in custody in Connecticut, but prior to his Connecticut conviction, prosecuting officials in New York notified the Connecticut authorities of criminal charges pending against the petitioner in New York and asked that a detainer be lodged against

the petitioner pertaining to those charges. On March 5, 1979, following the petitioner's conviction and sentencing in Connecticut, the New York authorities requested temporary custody of the petitioner pursuant to Article IV of the Interstate Agreement on Detainers (IAD).[1] On March 16, 1979, the petitioner was notified by Connecticut officials of the request for his temporary custody by New York prosecuting authorities and was asked to sign a form waiving extradition. The petitioner refused to sign such a waiver. Thereafter, on April 2, 1979, the governor of Connecticut was notified of New York's request that it be granted temporary custody of the petitioner for the purpose of placing the petitioner on trial in New York on New York's outstanding criminal charges. On April 19, 1979, the governor of Connecticut gave notice that she did not disapprove of New York's request. See Interstate Agreement on Detainers, General Statutes § 54-186, Art. IV (a). Accordingly, on August 9, 1979, temporary custody of the petitioner was transferred to the New York authorities.

The petitioner's trial on New York's criminal charges commenced on April 4, 1980. On May 7, 1980, he was convicted of those charges, and on September 5, 1980, he was sentenced to a term of imprisonment in New York of not less than fifteen years nor more than life. He was thereafter returned to Connecticut to complete the service of his Connecticut sentence. Subsequently, the New York authorities lodged a detainer with the respondent warden based on the petitioner's conviction in New York. The petitioner appealed his New York conviction in the courts of that state without success, until his appeal rights were exhausted in 1983. Therefore, when the petitioner is paroled or discharged from his Connecticut sentence, if the New York

---

[1] The IAD is codified in Connecticut as General Statutes § 54-186.

detainer filed against him is valid, he will be turned over to the New York authorities to serve his sentence in that state.

The petitioner, however, filed a petition for a writ of habeas corpus in the Superior Court in Connecticut. In his petition he alleged that the New York detainer that is lodged against him as a result of his New York conviction should be dismissed and removed from his file because his presence in New York for trial was obtained by a procedure that was in violation of Article IV of the IAD.

The habeas court, as a threshold issue, found that it had the authority to dismiss the New York detainer if the procedure used to obtain the petitioner's presence in New York for trial violated the IAD. See *Remick* v. *Lopes,* 203 Conn. 494, 498–99, 525 A.2d 502 (1987). The habeas court went on to find that the holding of the United States Supreme Court in the case of *Cuyler* v. *Adams,* 449 U.S. 433, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981), which was decided while the petitioner's New York conviction was on direct review, required a pretransfer hearing for the petitioner before he could lawfully be transferred to New York for trial.

*Cuyler* v. *Adams,* supra, was an action brought pursuant to 42 U.S.C. § 1983[2] for the alleged violation, by Pennsylvania officials, of the respondent Adams's

---

[2] Title 42 of the United States Code, § 1983 provides: "CIVIL ACTION FOR DEPRIVATION OF RIGHTS

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

rights under the IAD. The IAD is a uniform act that, as previously noted, is codified in Connecticut as General Statutes § 54-186. In *Cuyler,* the United States Supreme Court determined that Article IV of the IAD,[3] which provides for the involuntary transfer of prisoners serving a term of imprisonment in one state to another state for trial on pending criminal charges, requires

---

[3] Article IV of the Interstate Agreement on Detainers, General Statutes § 54-186, provides: "(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; provided that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request; and provided further that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

"(b) Upon receipt of the officer's written request as provided in paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who have lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

"(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

"(d) Nothing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executive authority of the sending state has not affirmatively consented to or ordered such delivery.

"(e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place

that such prisoner be afforded a pretransfer hearing substantially in accord with § 10 of the Uniform Criminal Extradition Act, prior to the transfer of the prisoner from the sending state to the receiving state.[4] The *Cuyler* court found that the respondent Adams, who had not been afforded such a hearing, stated a claim for relief under 42 U.S.C. § 1983. *Cuyler* v. *Adams,* supra, 450.

The habeas court, relying primarily on *Teague* v. *Lane,* 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334, reh. denied, 490 U.S. 1031, 109 S. Ct. 1771, 104 L. Ed. 2d 206 (1989), determined that *Cuyler,* which was decided after the petitioner had been transferred to, and tried, convicted and sentenced in New York, but while his case was still on direct review, was to be given retroactive effect and therefore was to be applied to the petitioner's habeas claim.[5] The habeas court concluded that the application of *Cuyler* to the petitioner's

---

of imprisonment pursuant to article V (e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

[4] The pertinent provision of § 10 of the Uniform Criminal Extradition Act is codified in Connecticut as General Statutes § 54-166, which provides: "APPEARANCE OF ACCUSED IN COURT. HABEAS CORPUS. No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him has appointed to receive him unless he is first taken forthwith before a judge of any court having criminal jurisdiction in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel states that he or they desire to test the legality of his arrest, the judge of such court shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the state's attorney of the county in which the arrest is made and in which the accused is in custody, and to the agent of the demanding state."

[5] The habeas court in its memorandum of decision also extensively discussed the cases of *Penry* v. *Lynaugh,* 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989), and *Saffle* v. *Parks,* 494 U.S. 484, 110 S. Ct. 1257, 108 L. Ed. 2d 415, reh. denied, 495 U.S. 924, 110 S. Ct. 1960, 109 L. Ed.

claim required the dismissal of New York's postconviction detainer lodged at Somers because the petitioner had failed to receive a pretransfer hearing prior to his removal to New York. We disagree.

*Teague* v. *Lane,* supra, holds generally that, with certain exceptions not pertinent here, new constitutional rules of criminal procedure will not be announced in or applied to cases that are on collateral review. The court in *Teague* also reiterated the view it had expressed in *Griffith* v. *Kentucky,* 479 U.S. 314, 322–23, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), that " 'failure to apply a newly declared *constitutional* rule to criminal cases pending on direct review violates basic norms of *constitutional* adjudication.' " (Emphasis added.) *Teague* v. *Lane,* supra, 304. The *Teague* court made clear, however, as did the *Griffith* court, that the court had reference to *constitutional* rules of criminal procedure when it mandated the application of newly announced rules of criminal procedure to cases still on direct review at the time the rules were announced. See *Diggs* v. *Owens,* 833 F.2d 439, 442 (3d Cir. 1987), cert. denied, 485 U.S. 979, 108 S. Ct. 1277, 99 L. Ed. 2d 488, reh. denied, 486 U.S. 1018, 108 S. Ct. 1759, 100 L. Ed. 2d 220 (1988).[6]

*Cuyler* v. *Adams,* supra, was not decided on constitutional grounds. *Cuyler* resolved a conflict among divided federal courts of appeal and state courts as to

2d 322 (1990), in arriving at its conclusion that *Cuyler* v. *Adams,* 449 U.S. 433, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981), was applicable to the petitioner's claim. *Penry* and *Saffle* rely on *Teague* v. *Lane,* 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334, reh. denied, 490 U.S. 1031, 109 S. Ct. 1771, 104 L. Ed. 2d 206 (1989), for their rationale.

[6] The petitioner in *Diggs* v. *Owens,* 833 F.2d 439, 442 (3d Cir. 1987), cert. denied, 485 U.S. 979, 108 S. Ct. 1277, 99 L. Ed. 2d 488, reh. denied, 486 U.S. 1018, 108 S. Ct. 1759, 100 L. Ed. 2d 220 (1988), which was a habeas corpus action, attempted to persuade the court that an IAD violation should be given retroactive effect because of *Griffith* v. *Kentucky,* 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987). The court of appeals decided otherwise.

the proper statutory construction of Article IV of the IAD. Id., 435–36. There is nothing in *Cuyler* to suggest a constitutional basis for the rule it announced relating to the construction of Article IV. Further, there is nothing in *Teague* or *Griffith* that suggests that nonconstitutional rules of criminal procedure are to be given retroactive effect. "There is no reason to apply the *Griffith* [or *Teague*] constitutional retroactivity holding here as the [IAD] is 'nothing more than a set of procedural rules . . . .' *United States* v. *Palmer,* 574 F.2d 164, 167 (3d Cir.), cert. denied, 437 U.S. 907, 98 S. Ct. 3097, 57 L. Ed. 2d 1138 (1978). Therefore, a violation of the [IAD] is not an infringement of a constitutional right." *Diggs* v. *Owens,* supra, 442. Because we conclude that *Cuyler* did not announce a *constitutional* procedural rule, the habeas court should not have accorded *Cuyler* retroactive application to the petitioner under *Teague* and *Griffith.*

Furthermore, *Cuyler* was a case brought under 42 U.S.C. § 1983. It was not a habeas corpus proceeding or a criminal case. The most that can be said for *Cuyler,* therefore, is that it is precedent for the proposition that the petitioner may have a viable § 1983 claim. We have been unable to find any authority, however, nor has the petitioner directed us to any, that suggests that *Cuyler* requires dismissal of a postconviction detainer in a habeas action because of the lack of a pretransfer hearing.

The judgment of the habeas corpus court is reversed and the case is remanded with direction to dismiss the habeas corpus petition.

In this opinion PETERS, C. J., COVELLO and F. X. HENNESSY, Js., concurred.

SHEA, J., concurring. Although I agree with the majority that the habeas petition must be dismissed and

the judgment of the habeas court reversed, I would reach that result upon the ground that the petition should have been dismissed at the outset for lack of jurisdiction over the state of New York, the validity of whose judgment convicting the petitioner is under attack in this proceeding. The detainer lodged against the petitioner is based on the New York judgment and authorizes the respondent to hold him in custody for delivery to New York officials when his Connecticut sentence has been served. The detainer, however, is simply a device for enforcement of the New York judgment and must be honored so long as that judgment remains in force. The petitioner purports to seek merely the "dismissal of the conviction detainer" and not to "overturn the New York criminal conviction." This, however, is a distinction without a difference, as the majority implicitly recognizes by addressing the validity of the New York judgment and holding that the procedural rule announced in *Cuyler* v. *Adams,* 449 U.S. 433, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981), is not retroactive and thus cannot impair that judgment or the detainer filed pursuant thereto.

Because the validity of the detainer that the petitioner concedes he is attempting to have dismissed is inextricably linked to the validity of the New York judgment, this court cannot properly consider the issue raised without the presence of New York in this suit. That state has the primary interest in upholding the validity of the detainer it has filed as a means of assuring delivery of the petitioner to its custody upon the expiration of his Connecticut sentence. The respondent warden, representing this state, has no significant interest in the suit because the petitioner will have satisfied his obligation for the crimes he has committed in this state before the detainer becomes operative.

In *Remick* v. *Lopes,* 203 Conn. 494, 525 A.2d 502 (1987), on which the trial court relied in concluding that

it had jurisdiction over this petition, we held that under the Interstate Agreement on Detainers (IAD), General Statutes § 54-186, Connecticut, as the "sending" state had jurisdiction to entertain an action by a prisoner seeking to invalidate detainers filed pursuant to the IAD by Massachusetts as the "receiving state" for the purpose of prosecuting charges against the prisoner in that state. The postjudgment detainer filed by New York against this petitioner, however, is not based on the IAD, which involves only pretrial detainers, but upon a judgment of a sister state to which we are constitutionally obliged to give "full faith and credit." The validity of any judgment can properly be considered only when all those having a legal interest therein have been made parties to the action.

Because the state of New York is an indispensable party to an action challenging the validity of the judgment it has obtained against the petitioner, the habeas court lacked jurisdiction to consider the issues raised in the petition, which relate wholly to the validity of the New York judgment. So far as the record discloses, the state of New York has not even been given notice of this proceeding, despite the fact that its interest is "of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields* v. *Barrow*, 58 U.S. (17 How.) 130, 139, 15 L. Ed. 158 (1855). "[F]air notice is an essential prerequisite to any kind of judgment." 1 Restatement (Second), Judgments § 5, comment b. Notice, however, would not satisfy the jurisdictional requirement for the presence of New York as a party in this litigation, in which the outcome must turn upon the validity of its judgment. Since we have no jurisdiction over an indispensable party to the controversy raised by the peti-

tion, I would reverse the judgment and remand the case to the habeas court with direction to dismiss the petition for lack of jurisdiction.