STATE OF CONNECTICUT *v.* STEVEN LEROY SMITH
(AC 17488)

Schaller, Hennessy and Mihalakos, Js.

Argued December 9, 1999—officially released April 25, 2000

*Sarah F. Summons*, special public defender, for the appellant (defendant).

*Toni M. Smith-Rosario*, deputy assistant state's attorney, with whom, on the brief, was *John T. Redway*, state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Steven Leroy Smith, appeals from the judgments[1] of the trial court revoking his probation and committing him to the custody of the commissioner of correction for the remaining portion of a sixteen year sentence of imprisonment imposed in 1984. The defendant claims that the court improperly (1) denied his motion to dismiss the violation of probation charges and (2) revoked his probation. We affirm the judgments of the trial court.

The following facts were before the court. In 1984, the defendant pleaded guilty to a series of offenses and received a total effective sentence of sixteen years, execution suspended after nine and one-half years with five years probation. After serving approximately six

---

[1] The defendant had been placed on probation in connection with separate judgments of conviction. The information charging him with violation of probation referenced both files, and the trial court rendered a judgment of violation of probation on each file.

and one-half years, the defendant was released from prison and on April 12, 1991, began his period of probation. Lisa D'Amato from the office of adult probation was assigned to supervise the defendant. D'Amato met with the defendant on October 1, 1991, reviewed his sentence, read him his conditions of probation and informed him that a violation could result in his going back to prison for six and one-half years.[2]

During the remainder of 1991 and until June, 1992, the probation office had difficulty locating the defendant because the home address that he had given did not exist, and a visit to another home address that he subsequently had given proved that he never lived there. On June 2, 1992, the state applied for an arrest warrant for the defendant, whose whereabouts were unknown. The state alleged a violation of probation in that the defendant failed to keep his probation officer informed of his whereabouts and to give immediate notice of a change of address or employment.[3]

In early 1993, the defendant was sentenced in California to two years in prison on unrelated charges. In November, 1993, the defendant was extradited to Colorado, where he was convicted of larceny and sentenced to four years in prison. In January, 1996, the state lodged a detainer against the defendant in Colorado, and he was subsequently extradited to Connecticut in August, 1996.

At a hearing on May 20, 1997, the court found that the defendant violated the conditions of his probation because he knew that he was on probation and he did not keep the officer informed of his whereabouts or

---

[2] The conditions of probation form states in relevant part: "Keep the Probation Officer informed of your whereabouts, give immediate notice of any change in address or employment, and permit the Officer to visit you as circumstances require."

[3] The defendant does not deny that he violated these conditions of probation.

give immediate notice of any change of address or employment. On June 4, 1997, the court held a hearing, after which it revoked the defendant's probation and sentenced him to the remaining portion of his original sentence.

I

The defendant claims first that the court improperly denied his motion to dismiss the charge of violation of probation. The defendant claims that he complied with the requirements of the interstate agreement on detainers (IAD),[1] and the state violated the IAD by not bringing him to trial within 180 days, thereby requiring that the violation of probation charge be dismissed. We disagree.

"The purpose of the IAD is to establish a cooperative procedure for disposition of charges against a prisoner in one state who is wanted to respond to untried criminal charges in another state. General Statutes § 54-186, art. I. The IAD is activated when the state seeking the prisoner (the receiving state) files written notice that

---

[1] The IAD is codified as General Statutes § 54-186. Article III (a) of § 54-186 provides: "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of the imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

he is wanted to answer charges in that state. This notice, referred to as a detainer, is simply a notification filed with the institution in which the prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction. *United States v. Mauro*, 436 U.S. 340, 359, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978)." (Internal quotation marks omitted.) *Smith v. Liburdi*, 26 Conn. App. 254, 256, 600 A.2d 17 (1991), cert. denied, 221 Conn. 910, 602 A.2d 9 (1992).

"The IAD is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law. *Cuyler* v. *Adams*, 449 U.S. 433, 442, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981)." (Internal quotation marks omitted.) *Remick* v. *Lopes*, 203 Conn. 494, 498, 525 A.2d 502 (1987). In *Remick*, our Supreme Court noted that the purpose of the IAD is "to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Id., 500, quoting § 54-186, art. I. Our Supreme Court also has noted that "[t]he United States Supreme Court, however, in *Carchman* v. *Nash*, 473 U.S. 716, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985), concluded that detainers based upon probation or parole violation warrants are not based on 'untried indictments, informations or complaints'; *Remick* v. *Lopes*, supra, 500; and therefore are not subject to disposition under the IAD." *Wheway* v. *Warden*, 215 Conn. 418, 427–28, 576 A.2d 494 (1990); see also *State* v. *Durkin*, 219 Conn. 629, 632–33 n.3, 595 A.2d 826 (1991).[5] Accordingly, we conclude that the trial court properly denied the defendant's motion to dismiss the charge of violation of probation.

---

[5] We note that the state admits it had no legal basis under the IAD to request the return of the defendant to Connecticut. We need not address that issue, however, as it was not raised by either party or the trial court.

## II

The defendant claims next that the court improperly revoked his probation because (1) he had no notice that the violation of probation would be based on his out-of-state convictions, (2) the finding of prior out-of-state convictions was based in part on the defendant's own admission and (3) he was not allowed to offer evidence during the dispositional phase of the violation of probation hearing.[6] We decline to review these claims.

The defendant raises these claims for the first time on appeal. "Ordinarily, we will not review a claim that was not distinctly raised before the trial court. Practice Book § 4185 [now § 60-5]; *State* v. *Reddick*, 33 Conn. App. 311, 331, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994)." *State* v. *Crump*, 43 Conn. App. 252, 261, 683 A.2d 402, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996). The defendant now seeks review of these claims under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant's request for review of these unpreserved claims is raised for the first time in his reply brief. Because *Golding* review may not be requested for the first time in a reply brief, we will not review these claims. See *State* v. *Crump*, supra, 261.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[6] The defendant disingenuously refers to the court's statement, "Don't say anything, sir," as proof that he was denied an opportunity to address the existence of out-of-state convictions. The record, however, reflects that the court had characterized some statements made to a probation officer by the defendant by stating, "You told them to go jump in the river." When the defendant attempted to address the court on that statement, the court interrupted and stated: "Don't say anything, sir. Those are my words, not yours. I'm not insinuating that's what you said."