ROBERT B. BERGER ET AL. *v.* ARTHUR L. FITZGERALD, JR., ET AL.
(AC 18045)

Lavery, Spear and Hennessy, Js.

---

Argued April 26—officially released October 5, 1999

*Michael C. Blaney,* for the appellants-appellees (plaintiffs).

*James H. Howard,* with whom, on the brief, was *Howard M. Wood III,* for the appellees (named defendant et al.).

*Wesley W. Horton,* with whom were *Maria N. Stavropoulos,* senior assistant town attorney, and, on the brief, *Christopher W. Bromson,* town attorney, for the appellee-appellant (defendant town of Enfield).

LAVERY, J. The plaintiffs[1] appeal from the judgment of the trial court quieting title[2] to certain real property in favor of the defendant Arthur L. Fitzgerald III (Fitzgerald III). The land was sold pursuant to a tax sale. On appeal, the plaintiffs claim (1) that General Statutes (Rev. to 1991) § 12-159 validates and cures any defects in the tax sale and (2) that the trial court improperly (a) concluded that the description of the land in the tax sale notice was insufficient and (b) determined the ownership of the land. We reverse the judgment of the trial court.

The following facts are necessary for our review of the plaintiffs' claims. The land in question is 4.465 acres in the town of Enfield (town). In 1979, the town's planning and zoning commission (commission) gave the then owner of the land, the defendant Arthur L. Fitzgerald, Jr. (Fitzgerald, Jr.),[3] approval to subdivide the land

---

[1] The plaintiffs are Edward J. McGuire, who originally purchased the property in question as a trustee, and Robert B. Berger and Frank G. Santy. McGuire, as trustee, sold the property to himself, individually, and to Berger and Santy.

[2] The plaintiffs' substitute complaint is in two counts: count one seeks to quiet title in the plaintiffs; count two seeks restitution from the defendant town of Enfield (town) if the plaintiffs are found not to own the property on which they have been paying taxes. Although the trial court rendered judgment as to only the first count of the plaintiffs' complaint, that judgment is final pursuant to Practice Book § 61-3 because it disposed of all causes of action brought against the Fitzgerald defendants. See *Turner* v. *Croman*, 52 Conn. App. 445, 446, 726 A.2d 1168 (1999). Practice Book § 61-3 provides in relevant part: "A judgment disposing of only a part of a complaint . . . is a final judgment if that judgment disposes of all causes of action in that complaint . . . brought by or against a particular party or parties. . . ." Although it is named as a defendant in count two only, the town participated in the trial of count one because it was affected directly by the resolution of the question of title. The defendant Safety Fund National Bank, which held a mortgage on the land, appeared through counsel but did not participate in the trial.

[3] The land also has been held in the name of the defendant Shamrock Realty, which is controlled by Fitzgerald, Jr.

into five lots. Subsequently, the land was described as lots 1, 2, 3, 4 and 5 on a map or plan titled "subdivision plan prepared for Norman H. Trudeau." The lots were identified on the town assessor's map seventy-four as lots 247, 248, 249, 250 and 251, and also on the assessor's map seventy-four as R-119, R-120, R-121, R-122 and R-123. Because Fitzgerald, Jr., never developed the subdivision, the commission canceled the subdivision approval on March 7, 1991, and the town returned the subdivision bond money of $32,676.71 to Fitzgerald, Jr. On March 15, 1991, a legal notice concerning the expiration of the subdivision was published in a local newspaper, and the subdivision map was stamped expired on May 2, 1991. Fitzgerald, Jr., did not pay taxes assessed on the land on the grand lists of October 1, 1986, through and including October 1, 1990,[4] wherein the lots were described as 247, 248, 249, 250 and 251 Hazard Avenue. The town tax collector, therefore, set in motion a tax sale of the land that is the subject of this litigation.

On August 14, 1991, the town published a notice of sale of land for taxes (1991 notice). Among the various parcels to be sold at auction on October 23, 1991, were two listed in the name of Fitzgerald, Jr. One parcel was identified as lot 49 Hazard Avenue on the assessor's map seventy-four, and the other was identified as 118 Hazard Avenue on the same map. The lots that are the subject of this action were described in the same notice as items thirty-five, thirty-six, thirty-seven, thirty-eight and thirty-nine, owned by Shamrock Realty and referred to as lots 247, 248, 249, 250 and 251 Hazard Avenue on the assessor's map seventy-four. The town, however, canceled the sale. Fitzgerald, Jr., received notice of the sale but did not receive notice of the cancelation.

[1] The Fitzgeralds also did not pay taxes on the land on the grand lists of October 1, 1992, through and including October 1, 1996.

On October 5, 1992, the town published a second notice of sale of land (1992 notice). The 1992 notice stated that parcel 20, in the name of Shamrock Realty, would be sold to satisfy unpaid taxes from the grand lists of 1986 through 1991 in the amount of $44,999.84, plus charges accrued. The parcel was described as lot 251 Hazard Avenue on the assessor's map seventy-four. The 1992 notice made no mention of lots 247, 248, 249 and 250 Hazard Avenue. The 1991 assessor's card identified the parcel as lot 251 Hazard Avenue, which contained 4.465 acres and was a combination of lots 1, 2, 3, 4 and 5. From this information, the trial court found that the tax collector identified the parcel in the 1992 notice as lot 251 in lieu of the description in the 1991 notice as lots 247 through 251, inclusive.

At the tax sale, which was conducted on December 14, 1992, the plaintiff Edward J. McGuire, as trustee (trustee), purchased parcel 20 for $79,170.22, the amount owed on the entire parcel since 1986, which included all the lots in the defunct subdivision, now one parcel. The trustee recorded the notice of purchase at tax sale on June 15, 1993. Thereafter, neither Fitzgerald, Jr., nor any other person redeemed the land in accordance with General Statutes (Rev. to 1991) § 12-157.[5] The December 17, 1993 tax deed to the trustee

[5] General Statutes § 12-157, as in effect in 1991, was not amended until Public Acts 1995, No. 95-228, which took effect on July 6, 1995. General Statutes (Rev. to 1991) § 12-157 provides in relevant part: "Within one week after such sale, the collector shall execute a deed thereof to the purchaser or to the municipality conducting the sale and shall lodge the same in the office of the town clerk of such town, where it shall remain unrecorded one year from the date of such sale, and, if the delinquent taxpayer or any person interested in the estate, within such time, pays or tenders to the purchaser or to such municipality, as the case may be, the amount paid by him . . . such deed shall be delivered to the person paying or tendering the money who, if not the person whose primary duty it was to pay the tax, shall have a claim against the person whose primary duty it was to pay such tax for the amount so paid, and may add the same to any claim for which he has security upon the premises sold. If the purchase money and interest are not paid within such year, the deed shall be recorded and have full effect. Any municipality holding a lien for unpaid taxes on real estate, other

did not refer to Fitzgerald, Jr., or Shamrock Realty as the prior owners. The trustee subsequently transferred title to the land to himself, individually, and to the other plaintiffs. The tax deed and the deed from the trustee to the plaintiffs described the land as lots 1, 2, 3, 4 and 5 on a map or plan titled "subdivision plan prepared for Norman H. Trudeau." On June 30, 1994, Fitzgerald, Jr., conveyed lots 247, 248, 249 and 250 to Fitzgerald III.

In June, 1994, the plaintiffs commenced an action to quiet title, and the Fitzgerald defendants counter-claimed to quiet title. The plaintiffs thereafter cited in the town as a defendant to obtain restitution of the moneys paid to the town pursuant to the tax sale if the plaintiffs were unsuccessful in quieting title in their favor. At trial, Fitzgerald, Jr., claimed that the town conveyed only lot 251 to the trustee as a result of the tax sale and that Fitzgerald III is the rightful owner of the remaining four lots. Fitzgerald, Jr., also claimed that the tax deed to the trustee was invalid because of two errors in the procedure used by the tax collector. He first claimed that because the land description in the 1992 notice was incorrect, a deed to lots 247 through 250 could not be conveyed. Second, Fitzgerald, Jr., claimed that the tax deed that the trustee recorded on December 17, 1993, was not lodged with the clerk within one week of the sale pursuant to § 12-157. The trial court found that the deed was lodged with the clerk on December 21, 1992, as required by § 12-157, and that the clerk later substituted a correcting deed, because the trustee objected to the statement in the original deed that the land was subject to liens rather than being sold free and clear of all liens. The court, citing § 12-159,[6] concluded that the clerk's action did not violate § 12-157 so as to void the tax deed.

___

than the municipality conducting the sale, may purchase such estate at a tax sale."

[6] General Statutes § 12-159, as in effect in 1991, was not amended until Public Acts 1995, No. 95-228, which took effect on July 6, 1995. General Statutes (Rev. to 1991) § 12-159 provides in relevant part: "Any deed, or the

The trial court agreed with Fitzgerald, Jr., however, that the land description in the 1992 notice was insufficient to provide notice to interested persons of what real property was being sold by the tax collector on December 14, 1992, because the description of the parcel was confusing. The 1991 notice described the land as items thirty-five, thirty-six, thirty-seven, thirty-eight and thirty-nine with reference to the assessor's map seventy-four showing lots 247, 248, 249, 250 and 251. The 1992 notice described the land as assessor's map seventy-four lot 251 Hazard Avenue. Furthermore, the tax collector described the land in the tax deed, not as it was described in the 1992 notice, but as lots 1, 2, 3, 4 and 5 on a subdivision map. The court concluded that no one should have to investigate the land records and

certified copy of the record of any deed, purporting to be executed by a tax collector . . . shall be prima facie evidence of a valid and unencumbered title in the grantee to the premises therein purported to be conveyed and of the existence and regularity of all votes and acts necessary to the validity of the tax therein referred to, as the same was assessed, and of the levy and sale therefor, and no tax collector shall be required to make return upon his warrant of his doings thereunder. No act done or omitted relative to the assessment or collection of a tax, including everything connected therewith, after the vote of the community laying the same, up to and including the final collection thereof or sale of property therefor, shall in any way affect or impair the validity of such tax as assessed, collected or sought to be collected or the validity of such sale, unless the person contesting such validity shows that such act done or omitted caused such tax to be greater than it would have been had a tax of the same per cent in favor of such community been in all respects legally assessed against the taxpayer, or did or would have put him to a greater expense in redeeming the property sold than if the same had been sold in all respects according to law, or that the collector neglected to mail to him the notice by law required, or to those with whom he is in privity of title, and who have a right to notice of such sale, and that he or they in fact did not know of such sale within one year after it was made, provided such property was by law liable to be sold to satisfy such tax; but the fact that the collector charged or received illegal fees upon such sale shall in no wise impair its validity, unless the person contesting it shows that the taxpayer or someone interested in the property sold tendered the lawful tax, interest and fees to the collector before such sale, or the purchase money with interest, less the excessive fees, to the purchaser within one year after it was made."

assessor's records to find out what real property was included in the 1992 notice of tax sale.

Because it found that the different descriptions of the land created confusion, the trial court concluded that it could not take away the property rights of Fitzgerald III and ruled that only lot 251 was conveyed to the trustee as a result of the tax sale. The court, therefore, quieted title in the land by rendering a judgment of ownership of former subdivision lots 247, 248, 249 and 250 to Fitzgerald III and former subdivision lot 251 to the plaintiffs. The plaintiffs appealed and the town cross appealed.[7]

"The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997). "Ordinarily, the construction and interpretation of a statute is a question of law for the courts . . . ." *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 507, 636 A.2d 1342 (1994).

On appeal, the plaintiffs claim that the notice of the tax sale concerning the land was sufficient and any irregularities were validated by § 12-159. We agree.

---

[7] In its cross appeal, the town claims that the trial court improperly concluded that the approval to subdivide the property into five lots was still valid and had not automatically terminated pursuant to General Statutes § 8-26c (d). Because we reverse the trial court's judgment, we need not address the town's cross appeal.

In *Ontario Land Co.* v. *Yordy*, 212 U.S. 152, 29 S. Ct. 278, 53 L. Ed. 449 (1909), the United States Supreme Court, in a case similar to this one, stated: "We have repeatedly held that these tax foreclosure proceedings are in rem, and not against the person of the owner, and that owners are bound to take notice of the property they own and pay the taxes thereon and defend against foreclosure for delinquent taxes, even though the property is assessed to unknown persons or to other persons." (Internal quotation marks omitted.) Id., 158, quoting *Shipley* v. *Gaffner*, 48 Wash. 169, 171–72, 93 P. 211 (1908).[8]

In *Yordy*, the plaintiff challenged the sufficiency of the description of land to be foreclosed in a tax sale by the state of Washington.[9] At the time of the tax proceedings, "while the land in controversy was within the limits of the Capital Addition to North Yakima, it had not been divided into lots and blocks, but was simply marked on the official plat 'reserved.' In other words, according to the record there was no such property as that described, and nothing to identify any property." *Ontario Land Co.* v. *Yordy*, supra, 212 U.S. 156. In affirming the decision of the Supreme Court of Washington, the United States Supreme Court cited the general rule regarding conveyance descriptions: "The first

---

[8] See also *Straus* v. *Foxworth*, 231 U.S. 162, 34 S. Ct. 42, 58 L. Ed. 168 (1913); *Ontario Land Co.* v. *Wilfong*, 223 U.S. 543, 32 S. Ct. 328, 56 L. Ed. 544 (1912). The issue also has been decided by several of the federal Circuit Courts of Appeal and our sister states on numerous occasions subsequent to *Yordy*. See *W.C. & A.N. Miller Development Co.* v. *Emig Properties Corp.*, 134 F.2d 36, 41 (D.C. Cir.), cert. denied, 318 U.S. 788, 63 S. Ct. 983, 87 L. Ed. 1155 (1943); *George* v. *Mutual Investment & Agency Co.*, 284 F. 681, 685 (8th Cir. 1922); *Warren* v. *Oregon & W.R. Co.*, 176 F. 336, 337 (9th Cir. 1910); *Linn County* v. *Rozelle*, 177 Or. 245, 257, 162 P.2d 150 (1945); *SAC Downtown Ltd. Partnership* v. *Kahn*, 123 Wash. 2d 197, 202–203, 867 P.2d 605 (1994) (en banc).

[9] The plaintiff claimed before the United States Supreme Court that sustaining the tax proceedings of the courts of the state of Washington would divest the plaintiff of its property without due process in contravention of the fourteenth amendment. *Ontario Land Co.* v. *Yordy*, supra, 212 U.S. 156.

requisite of an adequate description is that the land shall be identified with reasonable certainty, but the degree of certainty required is always qualified by the application of the rule that that is certain which can be made certain. A deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it was intended to convey. The office of a description is not to identify the land, but to furnish the means of identification. The description will be liberally construed to afford the basis of a valid grant. It is only when it remains a matter of conjecture what property was intended to be conveyed, after resorting to such extrinsic evidence as is admissible, that the deed will be held void for uncertainty in the description of parcels." (Internal quotation marks omitted.) Id., 157–58, citing L. Jones, Law of Real Property (1898) § 323, p. 263. Thus, *Yordy* stands for the proposition that the vigilant owner of real property is duty bound to go beyond the description provided in a notice of tax sale and look to extrinsic evidence if there is any doubt as to the land at issue.

In the case before us, the undisputed facts are that the taxes on the entire tract on the grand lists of October 1, 1986, through October 1, 1991, were unpaid at the time of the tax sale in 1992. Further, the town published a notice of sale of land for taxes and filed it on the land records. It also is undisputed that Fitzgerald, Jr., received timely notice of this sale and that the commission canceled the subdivision approval on March 7, 1991, and returned to Fitzgerald, Jr., the subdivision bond money in the amount of $32,676.71. Additionally, the notice of sale stated, "20. Property assessed from October 1, 1986, through October 1, 1991, in the name of Shamrock Realty Company to satisfy taxes of $44,999.84 plus all charges accrued thereon. Property described as assessors map seventy-four, Lot 251 Hazard Avenue."

It also is undisputed that the tax assessor's 1991 card listed the subject property as lot 251 on Hazard Avenue containing 4.465 acres and reflected that lot 251 was a combination of lots 1, 2, 3, 4 and 5. It further is undisputed that, on the basis of the assessor's card, the tax collector identified the property in the notice of sale as lot 251. Finally, there is no dispute that $44,999.84 in taxes were owed at the time of the 1992 notice, and that neither Fitzgerald, Jr., nor anyone else redeemed the property in accordance with § 12-157.

Fitzgerald III being the successor in ownership to Fitzgerald, Jr., stands in his shoes with respect to the tax sale. There is no question that, under *Yordy*, the property was sufficiently identified in the 1992 notice,[10] and that the amount owed was the amount due on

[10] The trial court concluded that potential bidders at the tax sale should not have to investigate the land records and assessor's records to find out what real property was included in the notice of tax sale published on October 5, 1992. We disagree.

Ordinarily, whether notice is adequate is a question for the trier of fact and the question must be determined on the basis of the facts of the particular case. *Ozmun* v. *Burns*, 18 Conn. App. 677, 681, 559 A.2d 1143 (1989). The trial court, however, "must first determine whether, as a matter of law, a purported notice patently meets or fails to meet . . . the statutory requirements." (Internal quotation marks omitted.) Id. In this case, we accept the facts as stipulated to and found by the trial court, but find as a matter of law those facts set forth an adequate notice of the property to be sold, especially to the delinquent taxpayer.

General Statutes (Rev. to 1991) § 12-157 required only that the notice contain "the name of the taxpayer, the amount of the tax or taxes, *a description of the property levied upon* and the time and place of the sale . . . ." (Emphasis added.) The notice at issue here stated, "Property described as assessors map seventy-four, lot 251 Hazard Avenue" and, as a matter of law, complied with the requirements of § 12-157.

We are aware that the legislature subsequently amended the statute in Public Acts 1995, No. 95-228, § 3, to provide that notice of a tax sale shall contain the "name of the taxpayer, *a legal description of the real property, including the street address*, upon which taxes are due, the amount of the tax or taxes due, including any interest and charges attributable to the property . . . ." (Emphasis added.) General Statutes (Rev. to 1997) § 12-157 (a). At the time of the sale in question, a legal description of the property was not required.

the entire tract, and that Fitzgerald, Jr., was properly notified of the tax sale and had one year to redeem his property. See General Statutes (Rev. to 1991) § 12-157. As in *Yordy*, the tax sale procedure is in rem and Fitzgerald, Jr., was required to take notice of his property, to pay taxes on it and to defend against any foreclosure for delinquent taxes. Fitzgerald, Jr., failed to do so.

In addition, General Statutes (Rev. to 1991) § 12-159 prevents Fitzgerald III from questioning the plaintiffs' title to the property. Section 12-159 provides in relevant part: "Any deed, or the certified copy of the record of any deed, purporting to be executed by a tax collector . . . shall be prima facie evidence of a valid and unencumbered title in the grantee to the premises . . . . No act done or omitted relative to the assessment or collection of a tax, including everything connected therewith . . . shall in any way affect or impair . . . the validity of such sale, unless the person contesting such validity shows that . . . the collector neglected to mail to him the notice by law required, or to those with whom he is in privity of title, and who have a right to notice of such sale, and that he or they in fact did not know of such sale within one year after it was made, provided such property was by law liable to be sold to satisfy such tax . . . ." Thus, unless Fitzgerald III can show that (1) the tax collector failed to mail him notice of the sale and that he did not have actual notice of the sale one year after it was made, or (2) that the property was not by law liable to be sold to satisfy the tax, then the plaintiffs' proffer of the tax collector's deed is prima facie evidence of their valid and unencumbered title to the subject property. See *Associates Financial Services of America, Inc.* v. *Sorensen*, 46 Conn. App. 721, 730, 700 A.2d 107 (1997), appeal dismissed, 245 Conn. 168, 710 A.2d 769 (1998).

Because it is undisputed that Fitzgerald, Jr., had, pursuant to *Yordy*, sufficient notice of the tax sale and did

not establish at trial that any of the exceptions to § 12-159 were applicable, unencumbered title to the property now lies with the plaintiffs as it did with the purchasers under the tax lien foreclosure proceedings in *Ontario Land Co.* v. *Wilfong*, 223 U.S. 543, 558–59, 32 S. Ct. 328, 56 L. Ed. 544 (1912). "Under the laws of the State a tax deed is prima facie evidence, not only of the validity of the deed and order under which the sale was made but also of the regularity of the prior proceedings." Id., 558.

The judgment is reversed and the case is remanded with direction to quiet title to the land by rendering a judgment of ownership in the plaintiffs.

In this opinion the other judges concurred.