# RONALD JOHNSON *v.* COMMISSIONER OF CORRECTION
## (AC 19394)

Foti, Schaller and Peters, Js.

Argued June 13—officially released September 19, 2000

*Adele V. Patterson*, deputy assistant public defender, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (respondent).

*Opinion*

PETERS, J. Article IV (c) of General Statutes § 54-186 is a provision of the Interstate Agreement on Detainers (IAD)[1] that affords a Connecticut prisoner the right to

---

[1] General Statutes § 54-186 states in relevant part: "The Agreement on Detainers is hereby entered into by this state with all jurisdictions legally joining therein in form substantially as follows: The contracting states solemnly agree that:

"Article I

"The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers,

request a speedy trial in another state that has lodged a detainer against the prisoner. This habeas appeal con-

when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

"Article II

"As used in this agreement: (a) 'State' shall mean a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico. (b) 'Sending state' shall mean a state in which a prisoner is incarcerated at the time that he initiates a request for final disposition pursuant to article III hereof or at the time that a request for custody or availability is initiated pursuant to article IV hereof. (c) 'Receiving state' shall mean the state in which trial is to be had on an indictment, information or complaint pursuant to article III or article IV hereof.

"Article III

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of the imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

\* \* \*

"Article IV
\* \* \*

"(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

\* \* \*

"Article V

"(a) In response to a request made under article III or article IV hereof, the appropriate authority in a sending state shall offer to deliver temporary

cerns two issues of law about the enforcement of that speedy trial right. One issue is whether the speedy trial right is enforceable without a showing of prejudice to the prisoner. The other issue is whether the speedy trial right with respect to out-of-state criminal proceedings automatically is tolled during ongoing criminal proceedings in this state. We agree with the trial court that, on both of these grounds, the petitioner, in the circumstances of this case, has not shown that he is entitled to the relief that he seeks.[2]

The petitioner, Ronald Johnson, filed a petition for a writ of habeas corpus in which he asked the habeas court to quash a detainer that had been lodged against

---

custody of such prisoner to the appropriate authority in the state where such indictment, information or complaint is pending against such person in order that speedy and efficient prosecution may be had. If the request for final disposition is made by the prisoner, the offer of temporary custody shall accompany the written notice provided for in article III of this agreement. . . .

\* \* \*

"(c) If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

\* \* \*

"Article VI

"(a) In determining the duration and expiration dates of the time periods provided in articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

\* \* \*

"Article IX

"This agreement shall be liberally construed so as to effectuate its purposes. . . ."

[2] In his appellate brief, the respondent advanced a claim of waiver as yet another reason why the petitioner could not prevail. Because this claim had not been raised at trial, the petitioner objected to its consideration. At oral argument in this court, the respondent withdrew the claim of waiver.

him by a district attorney in the Commonwealth of Massachusetts, where he was charged with having committed rape. He claimed that the detainer was no longer enforceable because authorities in Massachusetts had failed to commence proceedings against him within 180 days of their receipt of his request for speedy disposition of the charge. The respondent, the commissioner of correction, acknowledged the underlying facts alleged in the petition but denied the petitioner's right to relief, both on jurisdictional and on substantive grounds.

The court agreed with the petitioner that it had jurisdiction to decide whether to quash the Massachusetts detainer.[3] On the merits, however, the court agreed with the respondent that the petitioner had failed to establish, by a fair preponderance of the evidence, that the detainer was no longer enforceable. Accordingly, the court rendered a judgment denying the petitioner's request for relief and dismissing his petition for a writ of habeas corpus.

Most of the underlying facts are undisputed. As a result of the petitioner's conviction on June 17, 1996, of burglary in the third degree in violation of General Statutes § 53a-103, he was sentenced to a term of incarceration of two years.

On July 1, 1996, while the petitioner was serving the burglary sentence in Connecticut, a Massachusetts district attorney, having charged the petitioner with com-

---

[3] The respondent has not filed a cross appeal to challenge the trial court's conclusion that, pursuant to *Remick* v. *Lopes*, 203 Conn. 494, 498–500, 525 A.2d 502 (1987), the court had jurisdiction to decide the validity of the Massachusetts detainer. Even if the court had quashed the detainer, it would not have been empowered to dismiss the underlying charge, which Massachusetts might have pursued through other means. Id., 498. Because the respondent has challenged the continued authority of *Remick* v. *Lopes*, we note that it was followed in *Johnson* v. *Warden*, 218 Conn. 791, 794, 591 A.2d 407 (1991).

mitting rape in that state, lodged a detainer against the prisoner with the Connecticut correctional institution at which he was imprisoned. On July 5, 1996, the petitioner, having been informed of the detainer, initiated a request for final disposition of the Massachusetts charge against him. See General Statutes § 54-186, Art. III (a). That same day, Connecticut correctional personnel completed three IAD forms, IAD forms 2, 3 and 4, for transmission to Massachusetts. These forms correctly documented the petitioner's request for speedy disposition and his current inmate status. They also included an offer by authorities in Connecticut to deliver him to Massachusetts for temporary custody for "speedy and efficient prosecution" of the pending Massachusetts charge. These forms were sent to Massachusetts on August 2, 1996, and delivered there on August 8, 1996.

On August 16, 1996, while the petitioner still was imprisoned in this state because of his robbery conviction, he was charged here with having committed another crime. The state charged that on May 15, 1996, he had committed sexual assault in violation of General Statutes § 53a-70.

The petitioner's trial in New Haven on the sexual assault charge began on September 5, 1996.[4] Until the following March, the petitioner was taken, every two weeks, from his place of imprisonment to the New Haven courthouse. He was again returned to the courthouse on June 19 and July 17, 1997. On September 19, 1997, he pleaded guilty and was sentenced to a term of imprisonment of nine years, execution suspended

---

[4] The petitioner was informed, on September 13, 1996, of the pending sexual assault charge in Connecticut and of his right to a speedy trial thereon. He refused to sign a formal request for such action to be taken. Although he did file such a request on May 22, 1997, he withdrew that request five days later. By May, 1997, the 180 day speedy trial period in Massachusetts, unless tolled, had expired.

after four years. This is the Connecticut sentence that the petitioner currently is serving.

In the meantime, on December 17, 1996, authorities in Massachusetts had forwarded to this state a series of documents, IAD forms 5 and 6, manifesting their request for designated personnel in Massachusetts to take temporary custody of the petitioner to try him on the Massachusetts charge of rape.[5] There is a dispute about the validity of the court's finding that authorities in Connecticut refused to honor this request at that time. On October 15, 1997, Massachusetts authorities renewed their request.[6] That request was denied because of the pendency of the present habeas proceedings. The petitioner has not yet been brought to trial on the pending Massachusetts charge.

Although the petitioner offers several arguments for reversal of the judgment of the court dismissing his petition, the dispositive issues are twofold.[7] First, did the court properly require the petitioner to show, as a condition for obtaining relief, that he was prejudiced by delay in the enforcement of his right under the IAD to a Massachusetts trial within 180 days? Second, did the court properly conclude that any such delay was excused because the running of the 180 day period was tolled during ongoing criminal proceedings in this state?

---

[5] This request was a timely effort to gain temporary custody within the 180 day speedy trial provision of the IAD that the petitioner had invoked.

[6] The petitioner maintains that the second Massachusetts request was not sent, as the trial court found, on October 15, 1997. He claims that the request was not filed until December of that year. This difference has no significance in the present circumstances. If the 180 day period was not tolled, a request on either date would have been untimely.

[7] We will address the petitioner's argument with respect to two of the court's factual findings in our analysis of tolling. See part II A of this opinion. The result we reach there, namely, that the relevant state authorities acted properly, obviates the need to consider the merits of the petitioner's claim that the trial court improperly imposed on him the burden of proof of official dereliction.

We concur in the court's resolution of both issues in favor of the respondent.[8]

## I

## PREJUDICE

The petitioner claims that it was improper, as a matter of law, for the court to deny his petition for a writ of habeas corpus on the ground that he had failed to prove prejudice from the delay in enforcement of his right under the IAD to a trial in Massachusetts within 180 days of the receipt by authorities in Massachusetts of his request for such speedy trial. Our standard of review of the petitioner's claim is plenary. We must decide whether the court's conclusion is "legally and logically correct and find[s] support in the facts that appear in the record." (Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221, 435 A.2d 24 (1980); *Berger* v. *Fitzgerald*, 55 Conn. App. 138, 145, 739 A.2d 287, cert. denied, 251 Conn. 922, 742 A.2d 358 (1999); see also Practice Book § 60-5.

The validity of the petitioner's claim must be considered in light of the purpose of the IAD. The IAD "is designed to encourage the expeditious and orderly disposition of criminal charges pending in one state against a prisoner incarcerated in another state. General Statutes § 54-186, Article I." *State* v. *Herring*, 210 Conn. 78, 80, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989); *United States* v. *Mauro*, 436 U.S. 340, 359, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978);

---

[8] We recognize that a decision against the petitioner on either ground would require affirmance of the judgment. Because both of the petitioner's arguments have been fully briefed and because their resolution may give appropriate guidance in future habeas cases, we address them both.

*Smith* v. *Liburdi*, 26 Conn. App. 254, 256, 600 A.2d 17 (1991), cert. denied, 221 Conn. 910, 602 A.2d 9 (1992).[9] We are persuaded that the court's conclusion in this case fully supports the purpose of the IAD. Interstate cooperation to assist in the timely resolution of pending charges is fostered by allowing a sending state (Connecticut) to complete its ongoing criminal proceedings before agreeing to the temporary transfer of an in-state prisoner for an out-of-state trial in the requesting state (Massachusetts). We agree, therefore, with the court and the respondent that the habeas petitioner in this case could not obtain relief from the Massachusetts detainer without showing that he had been prejudiced by Connecticut's decision to postpone his transfer there.

The petitioner's challenge to the court's ruling on prejudice rests primarily on the holding of a 1972 New York trial court decision, which declared that the existence of an outstanding detainer should be presumed to have caused a prisoner to suffer from additional restrictive measures during his imprisonment. *Baker* v. *Schubin*, 72 Misc. 2d 413, 416–17, 339 N.Y.S.2d 360 (N.Y. Sup. Ct. 1972). In our view, a more persuasive precedent is *State* v. *Herring*, supra, 210 Conn. 78.[10] See also *Com-*

---

[9] "Because the IAD is an interstate compact that the federal Congress has sanctioned, we must interpret its provisions in accordance with federal law. *Carchman* v. *Nash*, 473 U.S. 716, 719, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985); *Cuyler* v. *Adams*, 449 U.S. 433, 438, 442, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981); *State* v. *Braswell*, [194 Conn. 297, 304, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985)]. In searching for the applicable federal law, we may, however, look to relevant decisions in both federal and state courts. *State* v. *Braswell*, supra [304]." *State* v. *Herring*, supra, 210 Conn. 85.

[10] The respondent also cites *Reed* v. *Farley*, 512 U.S. 339, 347, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994). That case is distinguishable, however, because it rests on jurisdictional limitations that govern federal habeas corpus proceedings. The petitioner correctly points out that state habeas corpus proceedings may provide relief that is not available in federal court. See *Lozada* v. *Warden*, 223 Conn. 834, 840–42, 613 A.2d 818 (1992).

*monwealth* v. *Petrozziello*, 22 Mass. App. Ct. 71, 81, 491 N.E.2d 627 (1986) (dismissal of robbery and burglary charges for violation of IAD not appropriate absent proof that defendant's rehabilitation has been impeded or adversely affected).

While *Herring* is not precisely on all fours with this case, it too involved a construction of the IAD in the context of delay in honoring a prisoner's speedy trial right. *Herring* was a case in which New Jersey, the sending state, had received proper documentation in support of a Connecticut request for a detainer. *State* v. *Herring*, supra, 210 Conn. 83. Prison officials in New Jersey unreasonably delayed the prisoner's ability to obtain a speedy trial by delaying the processing of the Connecticut documentation for six months. Id., 87. This unexcused delay violated subsections (b), (c) and (d) of Article III of the IAD. Id., 88. As a result, although the petitioner was tried promptly in Connecticut, the requesting state, after he was temporarily transferred here, the time period that had elapsed because of the delay in New Jersey exceeded the applicable IAD time standards. Id.

Despite this record of unexcused delay in New Jersey, the *Herring* court declined to dismiss the Connecticut criminal charges outright. Id., 89. The court held, instead, that the appropriate analysis was to be found in the balancing test of *Barker* v. *Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).[11] Referring to that test, the court focused, as a key factor, on whether the prisoner had been prejudiced by the delay. In the absence of prejudice, the *Herring* court concluded that dismissal of the prisoner's Connecticut

---

[11] "The four factors that form the matrix of a *Barker* v. *Wingo* analysis are: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *State* v. *Herring*, supra, 210 Conn. 89–90.

charges was unwarranted. *State* v. *Herring,* supra, 210 Conn. 90.

Although the present case involves the validity of a detainer rather than the validity of a prosecution, we are persuaded that we should follow *Herring* and employ the *Barker* v. *Wingo* test to judge the significance of the IAD delays in this case. If anything, this case presents a stronger argument for requiring a showing of prejudice than did *Herring.* Here, as far as the record shows, the delays at issue did not result from demonstrated administrative failings, either in Connecticut or in Massachusetts. We conclude, therefore, that the petitioner herein was, as the trial court held, required to show prejudice before he could obtain a dismissal of the Massachusetts detainer. He does not contest the fact that he made no such showing.

## II

### TOLLING

The petitioner also challenges the validity of the court's conclusion that the Connecticut criminal proceedings in late 1996 tolled the running of the time period otherwise triggered by his timely request for a speedy Massachusetts trial. As with respect to the previous claim of error, we undertake plenary review of this claim insofar as it involves a question of law, but we review questions of fact by asking whether the court's findings were clearly erroneous. *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.,* supra, 238 Conn. 232; *Berger* v. *Fitzgerald,* supra, 55 Conn. App. 145; see also Practice Book § 60-5.

The petitioner argues that, as a matter of fact, the court improperly determined that tolling was appropriate because authorities in Connecticut and Massachusetts had fulfilled their underlying IAD obligations. He also argues, as a matter of law, that the IAD does

not permit tolling of a proper and timely request for a speedy trial except in the case of delays attributable to the petitioner himself. Although we agree that the petitioner made a proper and timely request for his Massachusetts criminal trial to begin within 180 days, we disagree with his other contentions in the circumstances of this case. We are not persuaded that the IAD speedy trial provisions are as uncompromisingly restrictive as the petitioner claims them to be.

A

The petitioner challenges the validity of the court's findings of fact in two respects. He claims that there was insufficient evidence to support the court's findings that, after the lodging of the disclaimer, (1) authorities in Connecticut refused to permit Massachusetts officials to assume temporary custody and (2) Massachusetts officials made reasonable efforts to obtain temporary custody.[12]

The petitioner's claim of lack of evidentiary support for the challenged findings rests principally on the testimony of Lynn Milling, the interstate compact administrator for the Connecticut department of correction.[13] She stated that, in this case, once notified of the Massachusetts detainer, she had followed the general practice of leaving the resolution of any possible conflict between several prosecutions to the prosecutors involved, with advice to them to "work out the details." In December, 1996, she had called the Massachusetts prosecutor to advise him of this practice. She further stated that *the respondent* had done nothing in 1996 to prevent the petitioner's temporary transfer to Massa-

[12] The petitioner does not challenge the validity of Connecticut's refusal to transfer him temporarily to Massachusetts because of the present habeas corpus proceedings.

[13] Milling's position authorized her to act on behalf of the commissioner of correction in carrying out the mandates of the IAD.

chusetts. By contrast, the respondent expressly had denied a request by Massachusetts authorities for temporary custody in 1997, when the present habeas corpus proceedings were going forward. In the absence of any other direct testimony, the petitioner contends that the court was required to find that, in 1996, Connecticut authorities took no steps to prevent Massachusetts authorities from taking temporary custody.

The respondent does not challenge the probative value of Milling's testimony[14] that, in 1996, neither he nor his designated agents had refused a request by Massachusetts officials for temporary custody. Concededly, at the habeas hearing, no direct evidence was presented to document whether, at some relevant time, a Connecticut *prosecutor* had informed his Massachusetts counterpart of the decision of Connecticut officials to refuse the transfer request during the ongoing Connecticut criminal proceedings on the sexual assault charge against the petitioner. Although the continuance mittimuses that were exhibits at trial were evidence of the need for the petitioner's presence in Connecticut during the protracted time period of his Connecticut sexual assault trial, the mittimuses do not indicate who had requested the continuances. The only fact of record is that the petitioner did not pursue his speedy trial right in his sexual assault prosecution in Connecticut until a date subsequent to the expiration of the 180 day period that he had invoked by asking Massachusetts officials to afford him a speedy trial. See footnote 2.

Despite this sparse record, the respondent argues that, taken as a whole, the evidence presented at trial was sufficient to support the court's finding. He argues that the established fact of the ongoing Connecticut prosecution at the relevant time permitted the court to infer that Connecticut, speaking through one of its

---

[14] Only Milling testified at the habeas hearing.

prosecutors or one of its judges, manifested its refusal to relinquish temporary custody to Massachusetts. To state the obvious, the petitioner could not be in two places at the same time. "It is axiomatic that the trier of fact may draw reasonable and logical inferences from the facts proven. . . . In doing so, finders of fact are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct. . . . Our review of the fact finder's inferences is limited to determining whether the inferences drawn are so unreasonable as to be unjustifiable." (Citations omitted; internal quotation marks omitted.) *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 700–701, 651 A.2d 1286 (1995); *Service Road Corp.* v. *Quinn*, 241 Conn. 630, 640–41, 698 A.2d 258 (1997). We agree with the respondent that the trial court's finding of fact was not clearly erroneous.

The record similarly supports the court's finding that officials in Massachusetts took appropriate steps to obtain temporary custody of the petitioner in accordance with their December, 1996 request. Before filing this formal request, Massachusetts authorities had spoken to the Connecticut IAD administrator, Milling, about their interest in proceeding with the Massachusetts charge against the petitioner. Massachusetts authorities properly, and in a timely fashion, sent the required documentation to Connecticut. Again, the trial court reasonably could have inferred that subsequent conversations between the respective prosecutors would have informed Massachusetts officials that further efforts to obtain custody would not be fruitful at that time. That inference is supported by Milling's testimony that Massachusetts officials requested to be

notified as soon as the Connecticut sexual assault prosecution had been completed.

In addition to these fact-specific refutations of the petitioner's claims of factual error, the respondent argues that it was appropriate for the trial court to take into account the established principle that the petitioner bore the burden of proof to establish his right to the writ of habeas corpus. See, e.g., *Summerville* v. *Warden*, 229 Conn. 397, 428, 641 A.2d 1356 (1994); *Lubesky* v. *Bronson*, 213 Conn. 97, 109–10, 566 A.2d 688 (1989); *Myers* v. *Manson*, 192 Conn. 383, 387, 472 A.2d 759 (1984). We agree. If the evidence at trial was not as detailed as it might have been, it was the petitioner's burden to fill in the gaps. The challenged findings were not clearly erroneous.

B

We consider next the merits of the petitioner's argument alleging that the court improperly concluded that his speedy trial right in Massachusetts was tolled by ongoing criminal proceedings in Connecticut. The court's decision was premised, at least in part, on the petitioner's failure to demonstrate any breach of duty by either officials in Connecticut or Massachusetts. As we have concluded in part II A of this opinion, that finding was not clearly erroneous. The statutory basis for the court's ruling is Article VI (a) of the IAD. That section provides in relevant part: "In determining the duration and expiration dates of the time periods provided in articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial . . . ." General Statutes § 54-186, Art. VI (a).

The issue before us is whether the court properly applied the tolling principle to conclude that, until the petitioner's sexual assault charge was finally resolved, he was "unable to stand trial" in Massachusetts. We

conclude that, on the present record, the court's ruling must be upheld.

The petitioner takes issue with that conclusion on three grounds. He maintains that he was not "unable to stand trial" in Massachusetts because (1) the respondent failed to establish that the petitioner could not have been transferred to Massachusetts, and tried there, within the 180 day deadline, (2) the Connecticut proceedings were merely "pending" proceedings and therefore cannot justify a refusal to transfer temporary custody to Massachusetts and (3) his conduct did not cause the Connecticut proceedings to continue beyond the 180 day deadline because he had not filed any motions that required resolution before the plenary trial could go forward.[15] See *United States* v. *Roy*, 771 F.2d 54, 58–59 (2d Cir. 1985), cert. denied, 475 U.S. 1110, 106 S. Ct. 1520, 89 L. Ed. 2d 918 (1986).

Both parties cite a number of federal and state cases on the effect of competing prosecutorial efforts to pursue multi-state criminal charges against a single defendant. Each has demonstrated that none of these cases is controlling under the circumstances of this case. This is an issue of first impression.

The petitioner cannot prevail on his claim that, at his habeas hearing, the respondent failed to establish[16] that the petitioner could not have been transferred promptly to Massachusetts for the speedy trial that the IAD contemplates. Once the court found that Connecticut, for proper reasons, had refused to permit the temporary transfer, it was logical for the court also to find that that refusal "made it impossible for Massachusetts . . .

---

[15] The petitioner acknowledges that, if he had simultaneously sought speedy trials both in Connecticut and Massachusetts, he would not be protected by the IAD.

[16] In light of this documentary evidence, we need not decide which party bore the burden of proof on this issue. If the burden fell on the respondent, he satisfied it; if the burden fell on the petitioner, he did not satisfy it.

to bring the petitioner to trial within 180 days." The court's finding is the functional equivalent of a determination that the petitioner was "unable to stand trial" in Massachusetts within the 180 day speedy trial period.

The factual record equally disproves the petitioner's claim that, in the relevant time period, the Connecticut sexual assault proceedings were simply pending and not yet ongoing. The continuance mittimuses document that, during the relevant time periods, Connecticut authorities required the petitioner's presence for trial. From these documents, the court reasonably could infer that the petitioner was not then available for trial in Massachusetts. There was no evidence to the contrary.

The nub of the issue, therefore, is the petitioner's third claim, which alleges that he cannot be held to have been "unable to stand trial" in Massachusetts in the absence of any evidence that he contributed, in any fashion, to the delay in the disposition of the Connecticut sexual assault charge. It is true that, although the record establishes that numerous continuances caused delays in the Connecticut proceedings, it does not indicate whether the petitioner requested, or acquiesced in, the continuances.

The petitioner relies on decisions of the United States Court of Appeals for the Second Circuit that hold that a prisoner's speedy trial right is tolled only for periods of delay "occasioned by the defendant." (Internal quotation marks omitted.) *United States* v. *Roy*, supra, 771 F.2d 59; *United States* v. *Scheer*, 729 F.2d 164, 168 (2d Cir. 1984). These cases are, however, distinguishable. First, they address plenary motions to dismiss an indictment, rather than habeas corpus petitions to quash a detainer. Whether or not the detainer in this case is quashed, Massachusetts will be able, at some future time, to bring the petitioner to trial. See footnote 3. Second, and more important, in each case, the defen-

dant factually was shown to have taken actions that had contributed significantly to the delay in the completion of his trial. These federal cases do not address the proper resolution of a speedy trial claim in the absence of such a factual showing. Further, they do not express any view about which party bears the burden of proving that the delay was "occasioned by the defendant."[17]

In the circumstances of this case, we are confronted with a record that does not disclose, one way or the other, whether the petitioner was a moving force in the delayed resolution of the sexual assault charge in Connecticut. We must decide, therefore, whether the burden to establish such facts should be assigned to the habeas petitioner or to the respondent. Unless we accept the petitioner's contention that it was the respondent's burden to provide information about the provenance of the continuances that brought the petitioner repeatedly to court, he cannot prevail. We conclude that the burden of proof was his.

As we have observed earlier in this opinion, a petitioner who seeks a writ of habeas corpus bears the burden of establishing his entitlement to the writ. See *Summerville* v. *Warden,* supra, 229 Conn. 428; *Lubesky* v. *Bronson,* supra, 213 Conn. 109–10; *Myers* v. *Manson,* supra, 192 Conn. 387. The petitioner asserts, in conclusory fashion, that he had no power to control the course of judicial proceedings. Power is not the issue here. The issue is not whether the trial court in the sexual assault case properly granted the continuances that delayed the final resolution of the sexual assault charge.

---

[17] The respondent cites other cases in which courts have held that the right to a speedy trial under the IAD is automatically tolled by a showing that a prisoner is being tried elsewhere in other charges. See, e.g. *United States* v. *Roy,* 830 F.2d 628, 637 (7th Cir.), cert. denied, 484 U.S. 1068, 108 S. Ct. 1033, 98 L. Ed. 2d 997 (1987). We need not decide whether to adopt this broader principle because the petitioner cannot prevail even under the Second Circuit's narrower standard.

Instead, what the record lacks is an identification of the party that obtained or benefitted from the continuances. The petitioner does not explain why he or his counsel could not have obtained the relevant information by examining the court record in the sexual assault case. The petitioner likewise does not explain why he, or his trial counsel in the sexual assault case, could not have testified in this case about what had transpired at the hearings at which continuances were granted.

We conclude, therefore, that, in the absence of proof of the reasons for the delayed resolution of the petitioner's Connecticut criminal trial, the court reasonably determined that the petitioner was, in fact and law, unable to stand trial in Massachusetts during the Connecticut sexual assault proceedings. In the circumstances of this case, we concur in the court's conclusion that the Connecticut criminal proceedings tolled the Massachusetts criminal proceedings.

The judgment is affirmed.

In this opinion the other judges concurred.