NOT DESIGNATED FOR PUBLICATION

No. 117,168

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH MARTIN,
*Appellant.*


MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL GROSKO, judge. Opinion filed June 22, 2018. Convictions reversed, sentences vacated, and case remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Lois Malin*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., MALONE, J., and STUTZMAN, S.J.


PER CURIAM: Kenneth R. Martin Jr. appeals his convictions, claiming he was not brought to trial within the time required by the Agreement on Detainers (Agreement), K.S.A. 22-4401 et seq. Upon review, we agree and find the district court erred in extending the time for the State to bring Martin to trial and denying Martin's motion to dismiss. Martin's convictions are reversed, his sentences are vacated, and the case is remanded with directions for dismissal as detailed below.

1

FACTS AND PROCEDURAL BACKGROUND

On November 7, 2014, Kansas City police responded to an intrusion alarm at the Erman Corporation (Erman), a railroad reclamation facility in Kansas City, Kansas, which dismantles locomotives and railcars, salvages some parts, and recycles the remains. Two officers on the scene ran the license plate of a truck backed up to the entrance gate and learned the truck was registered to Martin. Another officer saw two men—Khalil Taylor and Martin—walking towards Erman. Martin told that officer that his GPS had led him down the road and his truck had broken down. Officers arrested Taylor for outstanding warrants but allowed Martin to leave.

The next day, an Erman employee discovered a push cart on the property with four radiators loaded onto it and filed an attempted theft report. Police later received surveillance footage of the scrapyard from the night of November 7 showing two men pulling the cart toward a truck parked at the gate. After viewing the recording, a detective went to the Wyandotte County jail to speak with Taylor, who admitted he and Martin had broken into Erman and tried to take the radiators.

On November 12, 2014, the State charged Martin with attempted theft and criminal trespass. Martin, then in custody at Western Reception and Diagnostic Correctional Center in St. Joseph, Missouri, sent detainer paperwork to Wyandotte County noting his location and requesting disposition of his Kansas charges.

Wyandotte County deputies drove to the Reception Center in St. Joseph, Missouri, on February 23, 2015, to take custody of Martin and return him for the Kansas proceedings, but Martin had been transferred to another facility. On March 23, 2015, deputies successfully gained custody of Martin and transported him from the Western Missouri Correctional Center in Cameron, Missouri, to Wyandotte County.

2

The preliminary hearing on Martin's charges originally was scheduled for May 21, 2015, but shortly before that the State learned of two previous thefts at Erman. The State requested a continuance to investigate Martin's potential involvement, which the court granted over Martin's objection. After further investigation, the State added two counts of theft from Erman between March and October 2014.

Martin did have his preliminary hearing on July 10, 2015. That same day, the State filed a motion to extend the time for trial. The motion asserted the office of the Wyandotte County District Attorney received Martin's request for disposition of his charges on January 6, 2015, triggering a 180-day time period to bring him to trial, which "expires on July 15, 2015"—an error, since 180 days after January 6 is July 5, not July 15. As a part of the reason for continuance, the State offered that it had "[become] aware of additional felony counts that required investigation" just before the originally scheduled preliminary examination. On May 20, 2015, therefore, the State told defense counsel it was not prepared to proceed the following day. The continuance, granted over Martin's objection, was the result. The State had amended the charges to add the two additional counts, but its motion contended it could not get the case to trial by the July 15 date it had erroneously assumed as the expiration of the period.

In response, Martin filed a motion to dismiss on July 23, 2015, arguing the State failed to try him for the alleged crimes within the 180-day deadline. Martin's motion observed the State had acknowledged receiving his request for disposition on January 6, but the clerk of the court showed a filing date of January 21; he pointed out that whichever was chosen as the start date, he had not been brought to trial 180 days thereafter.

The district court heard the motions on July 24, 2015, and found the 180-day deadline should be extended by 29 days for the time it took to locate and transport Martin from the Western Missouri Correctional Center to Wyandotte County and by an

additional 44 days for the time between Martin's appearance at a docket call on April 7 and the originally scheduled preliminary hearing. Working from the January 6 start date, the district court computed the extended deadline to be September 16, 2015. Martin filed a motion to reconsider, which the court denied.

Martin waived his right to a jury and the charges were presented to the district judge on stipulated facts. The district court reviewed those facts on August 10, 2015, and found Martin guilty on all counts—one count of attempted theft, one count of criminal trespass, and two counts of theft. Martin timely appeals.

ANALYSIS

In his motion to dismiss before the district court and in his brief, Martin frames his argument around a claim the State violated his statutory rights under the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 et seq. That Act, however, establishes certain rights for an "inmate in the custody of the Secretary of Corrections." Here, Martin was *not* in custody in this state, but in Missouri. We consider his argument, therefore, in light of the provisions of the Agreement, which applies when Kansas prosecutors have filed a detainer with authorities in another state where the person facing unadjudicated charges in Kansas is incarcerated. Although the UMDDA and the Agreement are not identical, for the purpose of our analysis under the facts in this case any differences are immaterial. Interpretation of a statute presents a question of law over which we have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

The UMDDA and the Agreement similarly grant to a person the right to request to be brought to trial on pending charges that are the basis for a detainer within a 180-day period. See K.S.A. 2017 Supp. 22-4303(b)(1)(A); K.S.A. 22-4401, Art. III(a). Under the Agreement, the person who is held in another state—the "sending state"—initiates the

4

process by causing written notice of the place of his imprisonment and his request for a final disposition of his charges to be delivered to the prosecutor and the court in the state where the charges are pending—the "receiving state." K.S.A. 22-4401, Art. III(a). The receiving state must transfer the person from the sending state and resolve the criminal charges within 180 days after receipt of the notice. If the receiving state then fails to bring the person to trial within that time, the court in the receiving state must dismiss the case. K.S.A. 22-4401, Art. V(c).

Under Article III of the Agreement, the 180-day countdown "commences only upon receipt of the prisoner's notice and request by the proper authorities in the state which filed the detainer against the prisoner." *State v. White*, 234 Kan. 340, Syl. ¶ 2, 673 P.2d 1106 (1983). But Article VI of the Agreement provides that the running of the 180-day period is tolled for periods when the defendant is unable to stand trial. K.S.A. 22-4401, Art. VI(a). The statute also can be tolled when the trial court grants a continuance for good cause, with the defendant present in person or by counsel in open court. K.S.A. 22-4401, Art. III(a); *State v. Waldrup*, 46 Kan. App. 2d 656, 671, 263 P.3d 867 (2011).

Martin had the initial burden to show he invoked his right to a speedy trial by substantially complying with the Agreement. See *In re Habeas Corpus Application of Sweat*, 235 Kan. 570, Syl. ¶ 5, 684 P.2d 347 (1984). The State does not contest that Martin properly sent his request and location both to the prosecutor and the court, meeting the initial requirements to bring him within the provisions of the Agreement.

In the district court, Martin and the State did work from different start points for the running of the 180 days—Martin based his motion to dismiss on the filing with the clerk of the court on January 21, 2015, while the State founded its motion to extend on its own receipt of the request on January 6, 2015. The district court relied on the January 6 date when calculating the time period. Depending on which one is chosen, the 180 days

expired either on July 5 or July 20, 2015. The issue before us does not rise or fall on which date is used, since Martin was not brought to trial until August 10, 2015.

The district court found the 180-day period should be extended by 73 days: 29 days for the time between the first attempt to retrieve Martin from Missouri, at St. Joseph, and the date he was taken into custody successfully on March 23 at Cameron; and 44 further days for the time between Martin's docket call appearance when his original preliminary examination was set and the date of that original setting on May 21, 2015. The court found the period of 50 days between the originally scheduled preliminary examination and the date it actually was heard should be attributed to the State and should not act to further expand the State's time to get Martin to trial.

*Twenty-nine days between trips to take custody of Martin in Missouri*

As mentioned above, the 180-day period can be tolled in two ways under the Agreement—either by a period when the inmate is "unable to stand trial" or by a continuance granted for good cause in open court. K.S.A. 22-4401, Art. VI; K.S.A. 22-4401, Art. III(a). The State contends Martin was "unable to stand trial" during the 29 days between the attempt to pick him up in St. Joseph, Missouri, and the actual pickup in Cameron, Missouri, but acknowledges its inability to find any case "nationwide" that considered comparable facts with a sending state moving a prisoner to another of its facilities after a request for disposition was filed without notifying the receiving state.

Two Kansas appellate court opinions interpret Art. VI's "unable to stand trial" language. In *State v. Rodriguez*, 261 Kan. 1, Syl. ¶ 2, 927 P.2d 463 (1996), our Supreme Court determined that when a prisoner becomes unavailable for trial as a result of requesting disposition of charges in another jurisdiction, the delay tolls the 180-day deadline and time lost is chargeable to the prisoner. This court had reached the same conclusion in *State v. Maggard*, 16 Kan. App. 2d 743, Syl. ¶ 4, 829 P.2d 591 (1992),

6

which was quoted in *Rodriguez*. 261 Kan. at 4. But Kansas has not addressed the specific issue presented here—where the delay arises from a move by the sending state that shifts a prisoner's location after he files his detainer disposition request with the receiving state.

The district court resolved the question by placing responsibility on Martin for the additional trip and concluding the State's time was extended by Martin's failure to report his move. Although the Agreement makes notice of "the place of his imprisonment" one of the threshold requirements for invoking the process to resolve an outstanding detainer, it imposes no continuing obligation on the prisoner to report any transfers initiated by his penal custodians. As with *Rodriguez* and *Maggard*, other cases the State cites dealt with prisoners unable to stand trial because they requested resolution of charges in more than one jurisdiction. In a case the State highlighted as factually similar to this one, *Johnson v. Commissioner of Correction*, 60 Conn. App. 1, 15-17, 758 A.2d 442 (2000), additional charges were brought in the sending state, Connecticut, after a detainer request had been filed with Massachusetts, and Johnson continued to be held in Connecticut during the prosecution of those new charges. The logic behind the result in those cases is inescapable—if it were otherwise, a prisoner facing charges in multiple jurisdictions would be able to run the 180-day clock in several places at once, resulting in mandatory dismissal through gamesmanship.

The responsibility, if any, that the State may bear for the unsuccessful attempt to pick up Martin is unclear. One exhibit to the State's motion to extend time for trial shows the State prepared a "Form VI"—"Evidence of Agent's Authority to Act for Kansas"—to pick up Martin in St. Joseph, Missouri, on February 23, 2015. But a second Form VI, also attached as an exhibit to that motion, requested release to Wyandotte County custody on March 23, 2015, at the correctional center in Cameron, Missouri, where Martin had been relocated. That second correct Form VI bears a February 19, 2015, date, four days prior to the unsuccessful trip to St. Joseph.

7

The cases relied on by the State are factually distinguishable and we have no authority to add a continuing obligation for Martin to report his whereabouts when no such requirement is present in the Agreement. Had the State simply called the St. Joseph facility prior to the first transfer attempt this issue would have been avoided. The fact that Martin was transferred by the authorities who were in complete control of his location, without notice to Wyandotte County, did not extend the 180-day time for him to be brought to trial.

*Forty-four days for exercise of right to a preliminary hearing*

The district court also found the State's time to bring Martin to trial should be extended by 44 days for the period between Martin's appearance at a docket call on April 7, 2015, and the May 21, 2015, date scheduled for his preliminary hearing. The district judge pointed out that a preliminary hearing is a statutory procedure and Martin asked for the exercise of that right. The court stated "my ruling is not based on the fact that he didn't want to waive [the preliminary hearing]. My ruling is based on the fact that he exercised his right and it took that amount of time to comply with his request."

We are not altogether clear about the distinction the district court intended to make, but we do not find the exercise of that statutory right to be equivalent to a request by Martin for a continuance. Presentation of evidence before a magistrate to support binding a defendant over for trial is part of the prosecution of the case with which the State is tasked in bringing that person to trial. A defendant's statutory right to make the State present evidence before a magistrate in support of its charges should not be available only at the expense of another of the defendant's statutory rights—the right to be brought to trial within a set time. We find the 44-day period for Martin to have a preliminary hearing should not have been used to extend the 180-day limit.

8

*Conclusion*

Using a start date based on the January 21, 2015 filing of Martin's disposition request, as proposed by the State on appeal, the 180-day period expired on July 20, 2015. Without the 29-day and 44-day extensions granted by the district court, Martin was brought to trial by the State 21 days past the deadline, on August 10, 2015. The Agreement required, therefore, that "the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." K.S.A. 22-4401, Art. V(c). Martin's convictions are reversed, his sentences are vacated, and the case is remanded for entry of dismissal by the district court as required by the Agreement.

Convictions reversed, sentences vacated, and case remanded with directions.